369 So.2d 371 (1979)
STATE of Florida, Appellant,
v.
Patrick Shawn SOUTHWELL, Appellee.
No. JJ-218.
District Court of Appeal of Florida, First District.
March 23, 1979.
Rehearing Denied April 30, 1979.
*372 Robert L. Shevin, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., for appellant.
Carlton P. Maddox of Dawson, Galant, Maddox, Sulik & Nichols, Jacksonville, for appellee.
MELVIN, Judge.
The appellant, the State of Florida, brings its timely interlocutory appeal to review an order granting appellee Southwell's motion to suppress evidence of contraband found in his overnight bag. We will refer to the parties as they were positioned in the trial court.
The defendant was a passenger on an airplane in flight from Miami to New York, when a stewardess noticed that he was unconscious. Her efforts to revive him having failed, she then checked the defendant's pockets for a medical alert tag or medicine, but instead found a plastic baggie containing a white substance. There was a doctor aboard the plane who, upon checking the passenger, advised the captain to arrange an immediate landing so that the defendant could be given emergency care. The captain changed the course of the plane and landed in Jacksonville. When the plane landed, the defendant was still unconscious. He was removed by a wheelchair onto a jetway ramp. The stewardess turned the baggie over to a police officer who was at the ramp. The defendant's overnight bag, which had been placed by him in a compartment near his seat, was also removed by the rescue squad and placed on the ramp near the defendant. The defendant, some 15 minutes later, regained consciousness. A short time thereafter, the defendant requested permission to board the airplane to resume his flight, and this request was denied. Although he was not under arrest at this time, he was detained by the officers and airport security personnel. He was escorted to the airport security office where the white substance contained in the plastic baggie, suspected by the officers to be cocaine, was given a field test by vice officers. Meanwhile, the defendant had possession of his overnight bag, which he carried to the security office. When the white substance had been given the field test, the result showed the presence of cocaine. The defendant was then placed under arrest for the unlawful possession of a controlled substance and was given the usual "Miranda warnings".
The defendant was then advised that he would be carried down to the jail, and he asked if he could deposit the overnight bag in one of the lockers at the airport. This request was refused by one of the officers who told the defendant that it would be better for him to keep it since the officer did not anticipate the defendant would be at the jail very long, and that he would have it with him when he came back to the airport to resume his flight. According to the testimony of one of the officers, the defendant agreed, picked up his bag and carried it out of the airport. Although this officer testified that he did not really suspect there was anything in the overnight bag, he gave the following response to the prosecuting attorney's following question:
"Q. What if he had said `I want to check it'. What would you have done?
"A. We would probably let him check it, then gotten a search warrant."
*373 The defendant's overnight bag was placed in the trunk of the officer's car. After a routine stop at a hospital, the defendant was booked at the jail. During the booking process, an officer removed the defendant's bag from the trunk of the police car and brought it into the jail. The officer testified that he had made an inventory of the contents of the overnight bag and came upon two one-pound bags of cocaine in said overnight bag belonging to the defendant.
The defendant filed a motion to dismiss the information charging unlawful possession of a controlled substance and also filed a motion to suppress evidence as to the plastic baggie the stewardess removed from his pocket and as to the contents of his overnight bag discovered as above set forth. Several depositions were taken in connection with the pending motions. The court entered its order denying the defendant's motion to dismiss the information, to suppress the evidence with reference to the plastic bag and contents removed from his pocket, and granted the defendant's motion as to evidence of any contraband found in his overnight bag.
The defendant's interlocutory appeal addressed to that portion of the order denying his motion to suppress evidence as to the plastic bag and contents has been dismissed by this court for lack of jurisdiction to consider the same.
We are not here concerned with what the law may have been with reference to a search of the defendant's overnight bag had such a search been made at the time the officers discovered the presence of the cocaine in the baggie removed from the defendant's pocket, or if the search had been made within a reasonable period of time thereafter at the premises of the security office as an incident to the arrest of the defendant for the unlawful possession of cocaine. We have an entirely different factual situation. The officers had complete control of the overnight bag, such control on the part of the officers was exclusive and under such circumstances that it would have been impossible for the defendant to have any access to the bag for any purpose. There was no danger that anyone acting in his behalf could open the bag for any purpose. So, we simply have the question whether under such circumstance, there being a complete absence of exigent circumstances, a warrantless search of personal baggage is constitutionally permissible. We perceive that the answer to this question is discoverable in United States v. Chadwick, et al., 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In that case, the defendants were observed loading a brown footlocker on a train that was bound from San Diego to Boston. The railroad officials' suspicions were aroused when they noticed that the trunk was unusually heavy for its size and that it was leaking a powdery substance. The officials reported the information to federal agents in San Diego who, in turn, relayed the information, along with the description of the defendants and that of the footlocker, to federal agents in Boston. Upon the arrival of the train in Boston, federal narcotic agents were present. They had no arrest warrant or search warrant, but did have a dog trained to detect marijuana. When the defendants claimed the footlocker, the agents released the dog, and the dog signaled the presence of a controlled substance inside such locker. When the defendants had placed the footlocker in the trunk of an automobile, the officers appeared and arrested them.
The Government conceded that from the moment of the time of the defendants' arrest, the footlocker was under the exclusive control of the law enforcement officers and that later the same had been placed in a federal building where there was no risk that anyone could remove any of the contents of the footlocker. There was no contention made that there was any exigency calling for an immediate search. About an hour and a half following the arrest, the agents, without a search warrant, opened the footlocker and luggage. This was done without the defendant's consent and without a search warrant. The footlocker contained large amounts of marijuana. The defendants were indicted for possession of marijuana with the intent to distribute it in violation of the applicable federal code. *374 They moved to suppress evidence of the marijuana obtained from the footlocker. At the suppression hearing, the government attempted to justify its failure to secure a search warrant under the "automobile exception" of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and as a search incident to the arrest. This contention was rejected by the District Court, holding that "warrantless searches are per se unreasonable, subject to a few carefully delineated and limited exceptions". 393 F. Supp. 763, 771 (Mass. 1975). The court observed that the relationship between the footlocker and the defendant's automobile were merely coincidental and that the double-locked 200 pound locker was not part of "`the area from within which [respondents] might gain possession of a weapon or destructible evidence'". The case was reviewed by the First Circuit Court of Appeals and a divided court affirmed the suppression of the seized marijuana. 532 F.2d 773 (1st Cir.1976). The Court of Appeals observed that the footlocker was properly in federal custody following the defendants' arrest, and that the agents had probable cause to believe that the footlocker contained a controlled substance when they opened it. The court then observed that such probable cause alone was not enough to sustain a warrantless search.
We note that in the case here under review, the officer stated that he did not have probable cause to believe that any unlawful substance was in the defendant's overnight bag, but nevertheless, when asked what he would have done if the defendant had insisted on checking the bag in a locker, replied: "We would probably let him check it, then gotten a search warrant." (emphasis supplied). It is thus illustrated that the officer considered that he had probable cause to obtain a search warrant from one of the judicial officers of Duval County.
In Chadwick, the United States Supreme Court rejected the Government's argument that the rationale of automobile search cases was a proper rule to apply to a warrantless search of baggage for Fourth Amendment purposes. The Court 433 U.S. at page 12, 97 S.Ct. at page 2484 held:
"The answer lies in the diminished expectation of privacy which surrounds the automobile:
`One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects... . It travels public thoroughfares where both its occupants and its contents are in plain view.'"
The Court then stated at p. 13, 97 S.Ct. at p. 2484:
"The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary functions is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile."
The Court then observed at p. 15, 97 S.Ct. at pp. 2485-2486:
"... Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency. Even though on this record the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn. *375 In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority. Respondents were therefore entitled to the protection of the Warrant Clause with the evaluation of a neutral magistrate, before their privacy interests in the contents of the footlocker were invaded."
No one suggests in the case here reviewed that at all times material there was no judicial officer in Duval County to whom an appropriate application for a search warrant could be reasonably addressed. To prepare such an affidavit and to cause the same to be brought on for judicial consideration involves, we recognize, a certain amount of the officer's time and perhaps an inconvenience to the officer. Constitutionally protected rights, however, may not be brushed aside for such considerations.
The able trial judge was eminently correct, and the order suppressing the evidence is hereby AFFIRMED.
McCORD, C.J., concurs.
BOOTH, J., dissents.