376 So.2d 13 (1979)
Jack AGNEW, John R. McKenzie, David J. Temens, Dennis Gostomski, Appellants,
v.
STATE of Florida, Appellee.
Nos. 78-132, 78-118, 78-191 and 78-256.
District Court of Appeal of Florida, Second District.
September 5, 1979.
Rehearing Denied October 23, 1979.
Barry A. Cohen, Tampa; and Edward T.M. Garland and Mark J. Kadish of Garland, Nuckolls, Kadish & Cook, P.C., Atlanta, Ga., for appellant Agnew.
Philip G. Butler, Jr. of Foley, Colton & Butler, P.A., West Palm Beach, for appellants McKenzie and Temens.
Archie M. Odom of Farr, Farr, Haymans, Moseley & Odom, Punta Gorda, for appellant Gostomski.
Jim Smith, Atty. Gen., Tallahassee, and C. Marie King, Asst. Atty. Gen., Tampa, for appellee.
HOBSON, Judge.
Appellants Jack Agnew, John R. McKenzie, David J. Temens and Dennis Gostomski appeal their judgments and convictions for possession of a controlled substance with intent to deliver. Appellants initially entered pleas of not guilty to the charge and filed motions to suppress evidence seized from a DC-3 airplane and a Cadillac automobile. The trial court denied the motions to suppress and appellants subsequently entered pleas of nolo contendere, specifically *14 reserving their right to appeal the denial. The trial court adjudged appellants guilty of the charge and sentenced Agnew, McKenzie and Temens to five years imprisonment and Gostomski to two years imprisonment. The order denying the motions to suppress stated in pertinent part:
It is thereupon specifically found as a fact that the aircraft searched and from which the contraband was seized was abandoned by the defendants prior to the search which they challenged.
The order did not speak to the evidence seized from the Cadillac.
Appellants contend that the State failed to meet its burden of proving that the airplane had been abandoned and therefore the denial of their motions to suppress was in error. We agree.
The record in this case reveals the following facts:
On Sunday evening, July 25, 1976, the Hendry County Sheriff's Office received a telephone call from a local resident stating that a DC-3 airplane had landed at the Airglades Airport and that several vans were backed up to it and the resident believed "there was dope on it." Corporal Sloan of the sheriff's office went directly to the airport, leaving instructions with the dispatcher to summon back-up officers. Sloan testified that when he arrived on the scene ten to fifteen minutes later he observed the airplane parked near a hangar leased by appellant Gostomski for his airplane repair business. He saw no one in the area and approached to within 25 to 30 feet of the plane. At that time he opened his car door and crouched near the car with a weapon. He ordered anyone who might be in the plane to come out, but no one responded. He circled around behind his car and observed no movement near the plane. At that time he noticed that the cargo door was open some three to four inches and as he approached the plane he was able to see through the cargo door. Captain Higdon arrived and the two officers looked through the door and observed brown burlap bags. Sloan testified that he believed the sacks contained contraband, but at the time he could not be certain. There were no markings on the bags and they emitted no particular odor. Sloan turned to Higdon and said, "I think we've got the jackpot, but I don't think we've got anybody inside the plane." At about that time a person ran across towards the plane and informed the officers that they had just missed a white Eldorado Cadillac that had exited the airport only moments before. The informant stated that there were four white males and perhaps a female in the car. Sloan went to his radio and advised the units in the area to be on the lookout for the white Eldorado Cadillac, tag unknown, containing four white males and possibly one female. A short time later, Sergeant Hendry arrived at the scene and Hendry and Sloan used a ladder to climb into the airplane through the door. Inside, the officers found ten bags of what they assumed was marijuana stacked in the plane. One of the bags was open and upon examination the officers decided that it did contain marijuana.
In the meantime, Deputy Thomas was approaching the airport and spotted a white Cadillac leaving the area. He contacted Sloan for instructions and was told to stop the Cadillac and hold all occupants until the other officers could get there. Thomas testified that he kept the Cadillac in sight for a period of time and observed its speed to be between 55 and 60 miles per hour. He further stated that the Cadillac maintained a steady speed, took no evasive action and pulled over promptly when he turned on the revolving lights on the patrol car. At that point Thomas approached the driver of the car, asked for identification, and detained the occupants until Sloan and Higdon arrived on the scene. Sloan and Higdon looked inside the Cadillac and observed a CB walkie-talkie and aerial maps on the floor of the car. The officers then opened the trunk of the car and found a Bearcat scanner, another walkie-talkie and several antennas. At this time they formally placed the occupants of the car under arrest.
*15 The officers returned to the airport in order to process the DC-3 airplane. Appellant Gostomski lived in a mobile home at the airport adjacent to the hangar he rented for his airplane repair business. The officers asked Gostomski to provide them with dropcords and light bulbs so that they could complete their investigation. When the lights in the hangar were turned on, Sloan observed a bale, similar to the ones found on the airplane, sitting on the floor of the hangar. Gostomski stated, "I don't need that. Get it out of here." There is nothing in the record to indicate just when Gostomski was arrested, and this bale of marijuana was not included in his motion to suppress.
Sloan and Higdon testified that when they first arrived at the airport the DC-3 was parked next to Gostomski's hangar. The tires were inflated although the plane was not tied down. Both officers stated that they could not be sure whether persons were on board or not when they initially approached the plane. The single road which serves as an entrance to the airport was blocked off by Higdon's son shortly after the officers arrived on the scene.
Appellants argue that the facts of this case cannot support the trial court's finding that the airplane was abandoned in order to justify a warrantless search. They contend further that if the search of the airplane and the seizure of the contraband is illegal, then it follows that the stop of the Cadillac automobile and the arrest of the occupants is the tainted fruit of the prior illegal search of the plane. The State argues that the absence of people in the immediate area of the plane and the fact that the plane was not tied down supports the abandonment theory. We are unable to accept the State's argument that leaving a plane parked in an area where repairs are often made means that one relinquishes his interest in the property and no longer has a reasonable expectation of privacy in it. See United States v. Colbert, 474 F.2d 174 (5th Cir.1973). It was only after the officers began the search of the plane that they finally determined that there were no passengers on board. According to the record, the plane was in flyable condition at all times during the search. Florida courts have held that the mere fact that a vehicle is unattended does not give anyone the right to search the vehicle. G.B. v. State, 339 So.2d 696 (Fla. 2d DCA 1976); Granville v. State, 348 So.2d 641 (Fla. 2d DCA 1977); Tolbert v. State, 348 So.2d 623 (Fla. 4th DCA 1977).
The State urges us to sustain the trial court's order denying appellants' motions to suppress under the rule of State v. Clyde, 299 So.2d 136, 137 (Fla. 2d DCA 1974). In that case this court stated:
... [A]n affirmance of the ruling of the trial court is appropriate if the trial judge's ruling is incorrect in one particular finding, but the ruling is correct and proper on other grounds or reasons.
The State contends that there was adequate probable cause coupled with exigent circumstances to justify the warrantless search. Further, the citizen's tip that a DC-3 was unloading dope at the airport was corroborated by Sloan who found the plane as described and saw that it contained burlap bundles similar to those which he had previously observed confiscated in the area. The fact that the search was conducted on a Sunday evening at a time when there was no personnel on duty at the sheriff's office to type an affidavit and the nearest judge was 25 miles away constitutes exigent circumstances which justify a warrantless search.
We hold that the facts of this case cannot sustain the theory of abandonment as a basis for the denial of appellants' motions to suppress evidence seized from the airplane. For these reasons, we reverse the judgments and sentences of appellants Agnew, McKenzie and Temens and remand this cause to the trial court for a determination as to whether or not there is any basis other than abandonment sufficient to deny the motions to suppress filed by appellants Agnew, McKenzie and Temens. These appellants are granted leave to withdraw their pleas of nolo contendere. We again note that the final order denying the motions *16 to suppress did not address the suppression of evidence seized from the Cadillac.
The bale of marijuana found in the hangar leased by Gostomski was in plain view of the officers and therefore was clearly admissible against him. On this basis the judgment and sentence imposed against Gostomski is affirmed.
GRIMES, C.J., and OTT, J., concur.