454 So.2d 617 (1984)
STATE of Florida, Appellant,
v.
Timothy Kevin McLAUGHLIN, Appellee.
No. 83-1000.
District Court of Appeal of Florida, Fifth District.
July 5, 1984.
Rehearing Denied August 22, 1984.
*618 Jim Smith, Atty. Gen., Tallahassee, and Mark Menser, Asst. Atty. Gen., Daytona Beach, for appellant.
Stuart I. Hyman of NeJame & Hyman, P.A., Orlando, for appellee.
COBB, Chief Judge.
The state appeals a suppression order arising from a unique factual background. The facts adduced at the suppression hearing below reveal the following:
On January 12, 1983, between 11:00 P.M. and midnight, Officer Little of the Sanford Police Department was driving his patrol car through the parking lot of a condominium complex which connected with an adjoining street when he saw a small box in an undesignated parking space. He stopped his car and shined a flashlight on the box, which appeared to him to be a "money box." He picked it up and determined it to be rather heavy. He shook the box, which was locked, and heard what sounded like coins. As Officer Little was taking the box to his patrol car, a car approached and the defendant, McLaughlin, exited the passenger side and asked Little if he had just found the box. The officer stated he had, whereupon McLaughlin said the box and its contents were his. Little then asked him what was in the box and McLaughlin responded that it contained money belonging to him. Little asked McLaughlin if he had a key to the box and McLaughlin told him he did not have one with him or at his apartment, but that his brother had a key. During this conversation, McLaughlin told Little that he lived in the condominium complex where the box was located. After taking down McLaughlin's name and address from his license, Little told him he was taking the box to the police station and would return it to him when he could produce a key and identify the contents.
Little then left the parking lot and drove to a convenience store where he met his sergeant. After they discussed how they would determine ownership of the box, Little drove to the police station, where he got a ring of keys from his own car, returned to the patrol car and tried the keys in the box lock. At this point, he did not have an inventory checklist. He opened the box with one of the keys, and discovered two zip-lock type clear bags in the box, one containing a white powder and the other a hard substance. He felt the contents were drugs. He closed the box, brought it into the police station and contacted his supervisor. When his supervisor arrived, they *619 opened the box but no inventory was made then. An inventory was made when Officer Little gave the box to the custodian in the morning. Officer Little said that had McLaughlin produced a key at the scene and unlocked but not opened the box, he would have "probably" given the box to him. However, later he indicated that he would have wanted McLaughlin to identify the contents.
Presented with the foregoing, the trial court rendered the following order of suppression, from which the state appeals:
ORDER
THIS CAUSE came on for consideration pursuant to the Defendant's Motion to Suppress and the Court having heard testimony, argument of Counsel and having read a number of Appellate Court decisions and the Court being fully advised in the premises finds as follows:
1. That the box containing the cocaine was found in the common area of the condominium association in a parking space in front of Defendant's residence. The parking space was not designated as Defendant's parking space but was in the vicinity of the condominium unit where he resided. This area, while not a private area for Defendant, was not a public area since it was in the common area for all residents of the condominium association.
2. In order to establish a zone of privacy upon which the government may not intrude without first obtaining a Search Warrant, a person must show an actual expectation of privacy in the area in question and that the expectation of privacy is in an area that society is prepared to recognize as reasonable. State v. Parker, 399 So.2d 24 (Fla. 3d DCA 1981). Since the area in which the box was found was a common area as opposed to a public area the Defendant had a reasonable expectation of privacy.
3. The contents of the box were not in plain view. The box was searched by the police at the Sanford Police Department after taking the box from the condominium area. The search of the box was not a valid inventory or protective search for which a Search Warrant would not be required. The box could have been reasonably sealed, inventoried and stored pending issuance of a Search Warrant since the police had complete control over the box. State v. Southwell, 369 So.2d 371 (Fla. 1st DCA 1979).
4. The police had no probable cause to believe that the box constituted contraband, instrumentalities or evidence of a crime.
5. Considering the totality of the circumstances, the Court specifically finds that the box had not been abandoned, that the Defendant had a reasonable expectation of privacy and that there was no probable cause for a search of the box without a Search Warrant. It is, therefore,
ORDERED AND ADJUDGED that the evidence, to-wit: cocaine found in the box be and the same is hereby suppressed.
DONE AND ORDERED in Chambers, at Sanford, Seminole County, Florida, this 17th day of June, 1983.
The state first argues on appeal that McLaughlin lacked standing to assert his motion to suppress because he had no legitimate expectation of privacy in the condominium parking lot, which was open and accessible to multiple persons, including Officer Little. This argument is specious, however, because McLaughlin, as the asserted owner of the locked box, would have an owner's reasonable expectation of privacy as to its contents. Based on that assertion, he has standing to challenge the impoundment of the box and the consequent search of its contents. See United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).
The real issue in this cause is set forth in the state's second point on appeal, to-wit: whether the box was legally seized and inventoried as lost (or abandoned) property. The state concedes that seizure and search of the box cannot be based on probable cause to believe a crime had been committed, *620 and that no search warrant could have been obtained. Instead, it argues that the box was lost property and that the contents were inventoried in an administrative search to ascertain the true owner. Purely administrative searches conducted to merely record the contents of a parcel are a recognized exception to the warrant requirement, says the state, relying primarily on two United States Supreme Court cases: Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), and South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
The appellee argues that the box was not lost or abandoned property because McLaughlin claimed it almost contemporaneously with its discovery by the police, and it was located in the parking lot of the condominium complex where he lived, thus giving him an expectation of privacy in regard to the location where it was found. Claiming an analogy between a motor vehicle and the box in the instant case, the appellee cites to a number of Florida vehicle cases[1] for the proposition that the mere fact that a motor vehicle is left temporarily unattended does not give police the right to search it. This analogy fails, however, because an unattended automobile, absent peculiar circumstances, does not give rise to a reasonable inference that the automobile is lost or abandoned property.
McLaughlin also cites to State v. Southwell, 369 So.2d 371 (Fla. 1st DCA 1979), for the proposition that luggage securely in the control of the police cannot be the subject of a Chimel[2] search incident to arrest or a Chambers[3] automobile exigency search. The viability of Southwell is doubtful in view of the principles subsequently enunciated in Lafayette. In Lafayette the defendant, who had been arrested for disturbing the peace, arrived at the police station carrying a purse-type shoulder bag. There, the contents of the bag were inventoried by the police, revealing contraband pills. Lafayette was charged with possession of the pills, but succeeded in the state courts of Illinois in suppressing the pills as evidence on the basis that the warrantless inventory search was illegal. Lafayette argued that his privacy interest in the shoulder bag was greater than in an automobile, thus distinguishing Opperman; he also contended that the state's legitimate interests could have been met in a less intrusive manner by sealing the shoulder bag in some manner and keeping it in a locker.
On discretionary review, the United States Supreme Court upheld the search and said:
Our prior cases amply support this conclusion. In South Dakota v. Opperman, supra, we upheld a search of the contents of the glove compartment of an abandoned automobile lawfully impounded by the police. We held that the search was reasonable because it served legitimate governmental interests that outweighed the individual's privacy interests in the contents of his car. Those measures protected the owner's property while it was in the custody of the police and protected police against possible false claims of theft. We found no need to consider the existence of less intrusive means of protecting the police and the property in their custody  such as locking the car and impounding it in safe storage under guard. Similarly, standardized inventory procedures are appropriate to serve legitimate governmental interests at stake here.
The Illinois court held that the search of respondent's shoulder bag was unreasonable because "preservation of the defendant's property and protection of police from claims of lost or stolen property, *621 `could have been achieved in a less intrusive manner.' For example, ... the defendant's shoulder bag could easily have been secured by sealing it within a plastic bag or box and placing it in a secured locker." [People v. Lafayette] 99 Ill. App.3d 830 at 835 [55 Ill.Dec. 210 at 215], 425 N.E.2d 1383, at 1386 (citation omitted). Perhaps so, but the real question is not what "could have been achieved", but whether the Fourth Amendment requires such steps; it is not our function to write a manual on administering routine, neutral procedures of the stationhouse. Our role is to assure against violations of the Constitution.
The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means. In Cady v. Dombrowski, 413 U.S. 433 [93 S.Ct. 2523, 37 L.Ed.2d 706] (1973), for example, we upheld the search of the trunk of a car to find a revolver suspected of being there. We rejected the contention that the public could equally well have been protected by the posting of a guard over the automobile. In language equally applicable to this case, we held, "[t]he fact that the protection of the public might, in the abstract, have been accomplished by `less intrusive' means does not, by itself, render the search unreasonable." Id., at 447 [93 S.Ct. at 2531]. See also United States v. Martinez-Fuerte, 428 U.S. 543, 557 n. 12 [96 S.Ct. 3074, 3082, n. 12, 49 L.Ed.2d 1116] (1976). We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the stationhouse. It is evident that a stationhouse search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved.
Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit. Only recently in New York v. Belton, 453 U.S. 454 [101 S.Ct. 2860, 69 L.Ed.2d 768] (1981), we stated: "`[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.'" Id., at 458-460 [101 S.Ct., at 2863-2864], quoting Dunaway v. New York, 442 U.S. 200, 213-214 [99 S.Ct. 2248, 2257-2258, 60 L.Ed.2d 824] (1979). See also United States v. Ross, 456 U.S. 798, 821 [102 S.Ct. 2157, 2170, 72 L.Ed.2d 572] (1982).
Lafayette, 462 U.S. at ___, 103 S.Ct. at 2610.
It is necessary, then, to apply the principles in Lafayette and the other cases set forth above to the findings of the trial court in the instant case. First, the trial court found that the parking lot where the metal box was found was a zone of privacy upon which the government could not intrude without a search warrant. We disagree with this finding as contrary to the facts of this case and the law pertaining to searches under the Fourth Amendment. State v. Parker, 399 So.2d 24 (Fla. 3d DCA), review denied, 408 So.2d 1095 (Fla. 1981), the case relied upon by the trial court in its order, is inapplicable. It dealt with a residence and enclosed back yard. In the instant case, we have a parking area which is unenclosed and unrestricted to traverse by the public. See U.S. v. Humphries, 636 F.2d 1172 (9th Cir.1980), cert. denied, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981); U.S. v. Sherriff, 546 F.2d 604 (5th Cir.1977). McLaughlin had no reasonable expectation of privacy in the undesignated parking space of the condominium.
The trial court correctly observed that the contents of the box were not in plain view  which is irrelevant in a case where seizure is not based on probable cause to *622 suspect criminal activity. The trial court then found:
The search of the box was not a valid inventory or protective search for which a search warrant would not be required. The box could have been reasonably sealed, inventoried and stored pending issuance of a search warrant since the police had complete control over the box. State v. Southwell, 369 So.2d 371 (Fla. 1st DCA 1979).
The trial court's finding that the search of the box was invalid necessarily implies that Officer Little was required to either (1) give the box to McLaughlin upon his request, or (2) seal and hold the box unopened pending application for a search warrant. The first alternative was not required, in our view, because it would have been unreasonable for the officer to release the apparently lost or abandoned money box to a person having neither a key to it nor an explanation, plausible or otherwise, as to why the box was in the parking lot.
The second alternative was not required because no search warrant could have been obtained and the valid purpose of impounding the box was to ascertain and protect the true owner, whoever that may have been, and who may or may not have been McLaughlin insofar as Officer Little could determine at that time. The only less intrusive method to accomplish that purpose was to hold the box unopened until a claimant appeared with a key to fit it  or until it became apparent that no claimant was going to appear, thereby requiring that the box be opened, as a last resort, for identification purposes. We do not believe, based upon the principles enunciated in Lafayette and Opperman, that this latter course was constitutionally required. Indeed, it is not at all clear that it would have been reasonable to turn over the box to any claimant with an operative key, without identification of the contents, in view of the comparative ease with which such a key could be found.
This brings us to the last, and perhaps most enigmatic, constitutional problem presented by this scenario. The appellee argues that standard police procedures for an inventory search were not followed by Officer Little because he first opened the box in the patrol car rather than waiting and having it initially opened in the presence of the property custodian with a checklist inside the police station. The appellee also notes that Little left no receipt with McLaughlin at the parking lot. We are unimpressed with this latter point because it assumes the box was taken from McLaughlin's possession  a premise unsupported by these facts. Whether or not McLaughlin had any legitimate interest in the box at the time of impoundment was the very question to be resolved. To say that McLaughlin was entitled to a property receipt begs the question.
It is apparent from the record that Officer Little did not employ the standard police inventory procedure when he initially opened the box. However, the appellee's claim that Little's imprudent search requires suppression ignores the inevitable discovery exception to the exclusionary rule. This doctrine was implicitly sanctioned by the United States Supreme Court in Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), see footnote 12. It has now been explicitly adopted in Nix v. Williams, ___ U.S. ___, 104 S.Ct. 2501, 81 L.Ed.2d 77 (1984).
The rationale underlying the doctrine is that the prosecution should not be put in a worse position in regard to the admissibility of probative evidence by police misconduct than it would have been in had there been no error or misconduct. Therefore, if the evidence derived via police misconduct was also available through an independent and untainted source, or inevitably would have been discovered without the misconduct, then its admission is justified as an exception to the exclusionary rule irrespective of the good faith or bad faith motivating the misconduct. See Nix at ___, 104 S.Ct. at 2507. The evidence test to ascertain the inevitability of discovery of the tainted evidence is that of preponderance. See Nix at ___, 104 S.Ct. at 2507; United States v. Matlock, 415 U.S. 164, *623 178, n. 14, 94 S.Ct. 988, 996, 39 L.Ed.2d 242, 253 (1974).
In the instant case, the question is whether or not the cocaine in the metal box would have been inevitably discovered by a proper inventory search in the police station. In other words, did Officer Little's impetuous peek prompt the subsequent inventory of the contents of the box, or would that have occurred in any event? Perhaps the box would have been held unopened and uninventoried by the Sanford Police Department, despite Lafayette, awaiting a claimant with a key, in the absence of Little's improper action. Perhaps such a claimant would have appeared, or perhaps not. These factual determinations have not been made by the trial court.
Accordingly, we reverse the order of suppression entered by the trial court dated June 17, 1983, and remand this cause to the trial court for further consideration of the motion to suppress in light of this opinion and that of the United States Supreme Court in Nix v. Williams.
REVERSED and REMANDED.
DAUKSCH and SHARP, JJ., concur.
NOTES
[1] See Lovett v. State, 403 So.2d 1079 (Fla. 1st DCA 1981); Hicks v. State, 398 So.2d 1008 (Fla. 1st DCA 1981); Agnew v. State, 376 So.2d 13 (Fla. 2d DCA 1979); G.B. v. State, 339 So.2d 696 (Fla. 2d DCA 1976); Godbee v. State, 224 So.2d 441 (Fla. 2d DCA 1969); Tolbert v. State, 348 So.2d 623 (Fla. 4th DCA 1977).
[2] Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
[3] Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).