369 So.2d 603 (1978)
Nathaniel FIELDS, Appellant,
v.
STATE of Florida, Appellee.
No. II-308.
District Court of Appeal of Florida, First District.
August 9, 1978.
*604 Michael J. Minerva, Public Defender, and Margaret Good, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., Charles W. Musgrove and Martha J. Cook, Asst. Attys. Gen., for appellee.
BOOTH, Judge.
This cause is before us on appeal from the order of the Circuit Court, Duval County denying appellant's motion to suppress evidence seized in an inventory search and adjudging appellant guilty, on a plea of nolo contendere, of the offense of possession of a controlled substance: methadone. The well-reasoned order of the trial court denying motion to suppress sets out the facts, legal principles involved and the correct application of those principles to the facts here, in pertinent part as follows:
"The material facts are not disputed:
(a) The reason for stopping the Defendant was that a reliable confidential informant had informed the police officer that Defendant did not have a driver's license.
(b) This information was received by police officer while the Defendant was eating breakfast and the car he had driven was parked at a restaurant. The police officer's vehicle was also at or near the restaurant.
(c) After Defendant drove the car from the restaurant onto the public street, the police officer stopped the Defendant. This occurred between 4:00 and 5:00 A.M. The car was stopped at the curb and was legally parked after the stop.
(d) The police officer asked the Defendant for his driver's license and car registration. The Defendant was not able to produce a driver's license or any other personal identification, but told the officer that the car belonged to his girl friend, and gave the officer her name.
(e) As the Defendant was going through the glove compartment the officer saw two other traffic tickets fall from the glove compartment. The officer had his spotlight on the glove compartment as it was opened by Defendant. The Defendant acknowledged that the traffic tickets were his and Defendant handed the traffic tickets to the officer upon request. They were for driving without a driver's license.
(f) Officer placed Defendant under arrest for driving without a valid driver's license and put him in back of the patrol car which the officer had driven. The car was locked.
(g) The passenger with Defendant also had no identification, so he too was placed in the locked patrol car. The passenger also told the officer that the car belonged to the Defendant's girl friend. The passenger had no driver's license with him.
(h) Officer noticed that the small plate with the serial number was missing, which the officer stated was against the law; Defendant states that he gave the officer the tag registration; the officer did not recall this but officer stated that he checked out the car ownership from the tag and found it was registered in the name of the person named by Defendant as the owner. This was done before the inventory was made.
(i) During the investigation, some friends of the Defendant (with whom he had been eating in the restaurant) drove up, but only stayed for a few seconds and left; there was no testimony as to whether those friends were asked to drive the car away or were offered the chance to drive the car away, or any communication between the occupants of the automobile and the Defendant. From the testimony, the friends did not stay long enough to be considered a factor in the Court's ruling.
(j) Following the arrest, officer made an inventory of car since he intended to have it towed away. The officer testified this was done in accordance with standard police procedure.
*605 (k) Officer did not ask Defendant for permission to inventory the car nor tell him that he was about to make an inventory of the car. According to the officer, the standard procedure under which he is obligated to proceed following an arrest, does not require him to make such inquiry of Defendant. The officer opened the trunk with keys which were in the car. The Defendant was not asked for permission to open the trunk or give permission to search the trunk.
(l) Defendant never objected to the inventory or suggested any alternative to the impoundment. During the period of the inventory, Defendant was in back seat of locked police car, and objecting to the search would have been difficult if not impossible.
(m) During the inventory, police officer found the controlled substance sought to be suppressed.

* * * * * *
3. The legal principles gleaned from these decisions [cited below] are:
A. Essential requirement to a valid inventory search is that the police have taken lawful custody of the vehicle in the first instance and that they act in good faith in conducting inventory rather than using it as a subterfuge for warrantless search. (Benton v. State)[1]
B. The basis on which Courts uphold inventory searches, i.e., that under routine police procedure it is essential when impounding a car to inventory it and its contents for preservation thereof as well as to insulate the police and garage owner from responsibility in the event of theft or destruction. (Godbee v. State)[2] [Case involved search not incident to arrest.]
C. Whether an inventory search is reasonable depends upon the totality of the circumstances. (G.B. v. State of Florida)[3]
D. The reasonableness of any search without a warrant is measured from the standpoint of the conduct of the searchers. If their conduct is in some way reprehensible, or if they precipitate a search and are motivated therein solely by desire to `hunt' for incriminating evidence, or if they do so without any plausible explanation or justification, the invasion is an unreasonable one. (Godbee v. State) [supra]
E. A silent arrestee need not be consulted as to his wishes concerning the care of his vehicle. (State v. Dearden)[4]
F. Before an inventory search of a motor vehicle may be conducted there must be some necessity for impounding it. (Altman v. State)[5]
G. Search conducted for the purpose of making an inventory of the contents of an automobile is not unreasonable within proscription of the Fourth Amendment if the totality of the circumstances demonstrates that a search is a bona fide inventory made in the course of ordinary police procedure, but such search will be unreasonable if it is utilized as a pretext to conduct an `exploratory' search in order to hunt for incriminating evidence. (State v. Jenkins)[6]
H. A valid inventory search may include a search into locked portions of the auto. (Godbee v. State) [supra] (Cady v. Dombrowski)[7]
4. The cases decided by various courts as set forth above have been determined by the facts of each case, and it is difficult to reconcile all of the holding [sic] because each case has a slightly different set of facts. In the instant case:
(a) The event occurred in the middle of the night.
(b) Although there was another person with Defendant, neither he nor Defendant could produce a valid driver's license, therefore *606 there was no one to drive the car following the arrest.
(c) The car could have been locked and left on the street, which would not have constituted any traffic hazard.
(d) The auto was not registered in the name of the Defendant; even though it was registered under the name given to the officer by Defendant, such owner was not at the scene, nor was any evidence adduced that she could have come to the scene within a reasonable time during the middle of the night.
(e) There is no showing or indication of bad faith on the part of the police officer, nor is there any hint that this was an exploratory search in order to hunt for incriminating evidence.
5. The requirements set forth on page 94 of the Jenkins decision serve as general guidelines, yet on the facts of the Jenkins case, which are very similar to the facts of the instant case, the Court held that the inventory search was not unreasonable.
6. I distinguish the facts in this case from the facts in the Benton case because in the Benton case, the Court found that the officer did not have the vehicle in his lawful possession, and that the search was based on a pretextual arrest.
7. Further the Court finds that it is not mandatory to give the Defendant notice that the auto will be impounded and inventoried, nor is it mandatory to obtain the consent of the owner of the auto, or in this case, the Defendant who had lawful custody of the auto prior to the search. However, where the circumstances permit, the individual in custody should be advised of and given the choice of leaving the car in its location, contacting someone else to take charge or having it impounded.
8. Taking the totality of the circumstances into consideration, the Court finds that the police officer did not act improperly and that he impounded the car because it was reasonable in view of the circumstances, and that the inventory was done in the course of ordinary police procedure and was not pretextual.
ORDERED AND ADJUDGED that the Motion to Suppress is hereby denied."
In the instant case, the validity of the arrest was not in question. Impoundment of the vehicle following arrest was valid even though the locked vehicle could have been left legally parked. The City remained subject to a claim by the absent owner in the event of theft or other damage to the vehicle or its contents and was not required to leave it parked on the street. The trial court found no evidence of improper use of the inventory search procedures by the law enforcement officer, and, considering the totality of the circumstances, held that the inventory search was not pretextual. We agree and the judgment below is, accordingly, AFFIRMED.
BOYER, Acting C.J., and SMITH, J., concur.
NOTES
[1] 329 So.2d 385 (Fla. 1st DCA 1976).
[2] 224 So.2d 441 (Fla. 2nd DCA 1969).
[3] 339 So.2d 696 (Fla. 2nd DCA 1976).
[4] 347 So.2d 462 (Fla. 2nd DCA 1977).
[5] 335 So.2d 626 (Fla. 2nd DCA 1976).
[6] 319 So.2d 91 (Fla. 4th DCA 1971).
[7] 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).