384 So.2d 245 (1980)
Joseph Virgil DELATTE, Appellant,
v.
STATE of Florida, Appellee.
No. OO-107.
District Court of Appeal of Florida, First District.
June 4, 1980.
Michael J. Minerva, Public Defender and Randolph P. Murrell, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and David P. Gauldin, Asst. Atty. Gen., for appellee.
McCORD, Judge.
Delatte appeals his judgment of conviction for carrying a concealed firearm entered upon his plea of nolo contendere, reserving his right to appeal the trial court's denial of his motion to suppress the firearm. Appellant contends the warrantless search of his travel bag was illegal because the inventory of its contents at the jailhouse was an unreasonable search, and in the alternative, he argues the search was not a bona fide inventory search. We disagree and affirm.
Police legally arrested Delatte upon discovering an outstanding arrest warrant charging him with escape from a Louisiana prison. Appellant, who was hitchhiking when arrested, had a travel bag in his possession. Delatte and the bag were transported to the jailhouse where he was processed and placed in a cell. The bag, after having been in the property room for approximately thirty to forty minutes, was searched by Sergeant Dekle for the purpose of safeguarding the jail after Officer Dula, who did not testify at the suppression hearing, reportedly told him there might be a gun in the bag. A loaded pistol was discovered among some clothes. It was determined that supervised inmates were occasionally permitted in the property room to retrieve their belongings, for example clothes, if they were going to court. At other times, and while supervised, trustees having cleaning duties were allowed access to the room. In addition, inmates went into the room to help retrieve their misplaced property. Weapons were not knowingly stored in the property room. Dekle further explained that, as a matter of policy, all luggage brought into the jail was to be searched for contraband, or "anything of that nature," apparently including a weapon *246 search to safeguard the jail.[1] However, it was not customary to complete an inventory of each item and no such inventory was performed here. It was admitted that the search might not invariably be performed in each case and might not have occurred here had not Dula spoken to the sergeant.[2]
The trial court denied the motion to suppress, finding that the objective to be accomplished, i.e., removing weapons from possible contact with other prisoners, was reasonable, and that the type of search made was routinely and customarily performed.
The threshold question is whether a valid "inventory search"[3] of luggage is precluded by the holding in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). We think not. Sanders was rendered to resolve misunderstandings as to the proper application of United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), concerning the invalidity of a warrantless search of locked footlockers seized from an automobile. 442 U.S. at 754-755, 762, 99 S.Ct. at 2588, 2592, 61 L.Ed.2d at 238-239, 244. Sanders held that a warrant is generally required before luggage can be searched, regardless of whether or not it is seized from an automobile. 442 U.S. at 764, n. 13, 99 S.Ct. at 2593, n. 13, 61 L.Ed.2d at 245, n. 13. The Court concluded:
[W]e hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where  as in the present case  the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained.
442 U.S. at 766, 99 S.Ct. at 2594, 61 L.Ed.2d at 246. In addition, Sanders recognized the possible validity of warrantless luggage searches under circumstances concerning public safety, and not a particular exigency. 442 U.S. at 764, n. 12, 99 S.Ct. at 2593 n. 12, 61 L.Ed.2d at 245, n. 12. In considering Sanders and Chadwick together, we do not find it surprising that Sanders failed to discuss the concept of inventory searches. Both cases involved probable cause to search for contraband and consequently, both opinions accentuated the warrant requirement in such cases. In connection with this discussion, the majority opinion in Chadwick acknowledged that the Court had held warrantless searches unreasonable, and therefore unconstitutional, in a variety of settings, but noted:
In circumstances involving noncriminal inventory searches, where probable cause to search is irrelevant, we have recognized "that search warrants are not required, linked as the warrant requirement textually is to the probable-cause concept." South Dakota v. Opperman, 428 U.S. 364, 370, n. 5, 96 S.Ct. 3092, 3097, n. 5, 49 L.Ed.2d 1000 (1976). This is so because the salutary functions of a warrant simply have no application in that context; the constitutional reasonableness of inventory searches must be determined on other bases.
433 U.S. at 10, n. 5, 97 S.Ct. at 2483 n. 5. Thus, we are of the opinion that consideration *247 of the inventory search (or protective safety search for weapons) issue, not raised in either Sanders or Chadwick, is not precluded by the holdings or rationale of either case. Several post-Chadwick cases expressly or impliedly recognize this. United States v. Bloomfield, 594 F.2d 1200 (8th Cir.1979); Mooney v. State, 243 Ga. 373, 254 S.E.2d 337, 343-346 (1979) cert. denied, 444 U.S. 475, 100 S.Ct. 472, 62 L.Ed.2d 116 (1979); People v. Merchant, 86 Mich. App. 355, 272 N.W.2d 656, 658-659 (1979); United States v. Hill, 458 F. Supp. 31, 34 (D.C. 1978).
We must decide next whether the search here was a valid protective search. To guide us in this determination, we should first recognize some basic principles which have been developed in our state in this area. In Elson v. State, 337 So.2d 959, 963 (Fla. 1976), quoting State v. Jenkins, 319 So.2d 91, 93 (Fla. 4th DCA 1975), with approval, our Supreme Court recognized the serious intrusion which occurs in an inventory case involving the search of personal belongings:
Regardless of the resort to a play on semantics suggesting that a distinction exists between an `inventory' and a `search' an `inventory' search is a `search' within the Fourth Amendment prohibition against unreasonable searches and seizures  A rose by any other name would smell as sweet  Shakespeare.
Courts considering the inventory concept do not always agree as to whether the inventory is a search within the Fourth Amendment since some courts say that a search implies an examination of premises or persons with a view to the discovery of evidence of guilt. [Citation omitted.] Other courts, including ours, hold that the Fourth Amendment governs all intrusions on personal security by agents of the public. If there is an intrusion upon personal security by an officer, there is a search. [Citations omitted.]
Defendant should have been given the choice of leaving his belongings in the motel room or requesting the sheriff to take them into custody for him. He should not be required without his consent to have his personal belongings stored by the sheriff during the time that he is in jail.
337 So.2d at 963.
In Elson, the sheriff and the highway patrolman had proceeded to the motel to make an inventory search so as to protect any property the defendant might have had at the motel and obtain money which might be available for bond. Elson enunciated the following:
The inventory search concept can validate a warrantless search only where the police have some valid reason or right for taking a defendant's property into custody. It is well settled, of course, that the search of a vehicle is not unreasonable when the search is a routine inventory of the car which is taken into custody. [Citations omitted.] ...
The distinction between an inventory search and an exploratory search is a delicate one which depends upon the totality of the circumstances in each case.
The common type of inventory case is the automobile inventory. Some of the principles have been stated in Fields v. State, 369 So.2d 603, 605 (Fla. 1st DCA 1978) as follows:
Essential requirement to a valid inventory search is that the police have taken lawful custody of the vehicle in the first instance and that they act in good faith in conducting inventory rather than using it as a subterfuge for warrantless search. [Citation omitted.]
The basis on which Courts uphold inventory searches, i.e., that under routine police procedure it is essential when impounding a car to inventory it and its contents for preservation thereof as well as to insulate the police and garage owner from responsibility in the event of theft or destruction. [Citation omitted.]
.....
The reasonableness of any search without a warrant is measured from the standpoint of the conduct of the searchers. If their conduct is in some way reprehensible, or if they precipitate a search and are *248 motivated therein solely by desire to `hunt' for incriminating evidence, or if they do so without any plausible explanation or justification, the invasion is an unreasonable one. [Citation omitted.]
Although the United States Supreme Court has not considered the precise type of search presented here, we think the groundwork exists for upholding the protective safety search for weapons shown here. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) first upheld the validity of a routine inventory search for an automobile lawfully impounded by police. A study of Opperman reflects a balancing of interests test which translates into a finding of what is a reasonable intrusion. Initially, Opperman recognized, for various reasons, the diminished expectation of privacy in an automobile. 428 U.S. at 367-368, 96 U.S. at 3096. The Court also stated the authority of the police to seize and remove vehicles under certain circumstances, finding that a subsequent inventory of an automobile developed to meet three distinct needs, one of which included "the protection of the police from potential danger." 428 U.S. at 369, 96 S.Ct. at 3097, citing Cooper v. California, 386 U.S. 58 at 61-62, 87 S.Ct. 788, at 790-791, 17 L.Ed.2d 730 (1967). Plainly, the test to be applied is one of "reasonableness." In this regard, Opperman reasoned:
In Cooper v. California, supra, the Court upheld the inventory of a car impounded under the authority of a state forfeiture statute. Even though the inventory was conducted in a distinctly criminal setting and carried out a week after the car had been impounded, the Court nonetheless found that the car search, including examination of the glove compartment where contraband was found, was reasonable under the circumstances. This conclusion was reached despite the fact that no warrant had issued and probable cause to search for the contraband in the vehicle had not been established. The Court said in language explicitly applicable here:
It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. 386 U.S. at 61-62, 87 S.Ct. 788 [at 790-791], [17 L.Ed.2d 730]. [Footnotes omitted.]
428 U.S. at 373, 96 S.Ct. at 3099. In Cooper, the search was not justified on the basis of an inventory of the items in the car. Rather, the issue presented was whether the search was reasonable under the Fourth Amendment, it being recognized that the reason for and nature of the custody may constitutionally justify the search. 386 U.S. at 61, 87 S.Ct. at 790. Opperman also cited Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), which did not involve an inventory of the contents of the car, but rather was a justifiable intrusion undertaken "to protect the community's safety" where the police had reasonable grounds to believe a weapon might be in the car and thus available to vandals. South Dakota v. Opperman, 428 U.S. at 374, 96 S.Ct. at 3099.
In Cady, the Court used analogy as an aid in determining what was reasonable. For example, the Court explained:
In Harris the justification for the initial intrusion into the vehicle was to safeguard the owner's property, and in Cooper it was to guarantee the safety of the custodians. Here the justification, while different, was as immediate and constitutionally reasonable as those in Harris and Cooper: concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle... . While perhaps in a metropolitan area the responsibility to the general public might have been discharged by the posting of a police guard during the night, what might be normal police procedure in such an area may be neither normal or possible in Kewaskum, Wisconsin. The fact that the protection of the public might, in the abstract, have been accomplished by `less intrusive' means does not, by itself, render the search unreasonable.
413 U.S. at 447, 93 S.Ct. at 2531. The Court concluded:

*249 Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not `unreasonable' within the meaning of the Fourth and Fourteenth Amendments.
413 U.S. at 448, 93 S.Ct. at 2531. In sum, a line of United States Supreme Court cases and the inventory search cases of our state provide ample guidance for concluding that the protective safety weapons search undertaken here was "reasonable."
Delatte was taken into lawful custody under circumstances which do not even remotely suggest a pretextual arrest. His bag accompanied him to the jail because there was nothing else to be done with it. Delatte never requested that the bag be taken elsewhere or be given to anyone else and there is no evidence that he was prevented from making such a request. See Fields v. State, supra. Compare Elson v. State, supra. The justification for separating Delatte from his property can not be seriously questioned. "It can not be denied that to prevent escape, self-injury, or harm to others, the police have a legitimate interest in separating the accused from the property found in his possession." United States v. Lipscomb, 435 F.2d 795, 800 (5th Cir.1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). More specifically, we agree that "police have full authority to prohibit the entry of weapons, drugs or other potentially harmful items into jail." State v. Kaluna, 55 Haw. 361, 520 P.2d 51, 61 (1974). Thus, at the point when the bag was brought into the jailhouse, the officers clearly had the duty and authority to store the travel bag and its contents safely.
The problematic issue is whether the travel bag could be reasonably searched, rather than stored as a unit, to accomplish the objective of safeguarding the jail considering the possibility that a weapon might be located in the bag. We think this question deserves scrutiny particularly when luggage is involved, which, unlike the automobiles in Opperman, Cady and Cooper, "is inevitably associated with the expectation of privacy." Arkansas v. Sanders, 442 U.S. at 762, 99 S.Ct. at 2592, 61 L.Ed.2d at 244. Other jurisdictions, recognizing that an inventory search is justifiably conducted for the protection of the police from dangerous instrumentalities, require that there be at least a reasonable suspicion to believe that the contents are particularly dangerous before a container may be reasonably searched. See, e.g., People v. Counterman, 192 Colo. 152, 556 P.2d 481, 484-485 (1976), (involving inventory of a sealed knapsack). An example of this view is stated in United States v. Bloomfield, 594 F.2d 1200, 1203 (8th Cir.1979), as follows:
As to the last purpose, however, protecting the police from danger, an argument could be made that by inventorying the contents of the knapsack, the police would more likely become apprised of harmful items within. In determining whether this governmental interest warrants the further infringement on a citizen's right to privacy that an itemized inventory could impose, we must balance the "governmental and societal interests advanced to justify such intrusions against the constitutionally protected interest of the individual citizen in the privacy of his effects." [Citations omitted.]
...
It seems to us, in the case at hand, that comparing this right to privacy with the governmental interest at stake, the governmental interest is slight. It is simply not reasonable to assume that, given the circumstances in which this knapsack was found, storing it as a unit at the police station, without specific knowledge of its contents, can pose a danger to police. As Justice Powell acknowledged in his concurring opinion in South Dakota v. Opperman, supra, 428 U.S. at 378, 96 S.Ct. 3092 [at 3101], while the danger associated with impounding unsearched automobiles can not be discounted, it is rare. In addition, there are alternative ways of detecting such danger, such as use of dogs trained to locate explosives. Because there is no indication in this situation that appellant's knapsack posed any *250 danger to police, we do not believe that opening and inventorying its contents, rather than storing the knapsack as a unit can be justified on the basis of protecting police.
In conclusion, we note that our holding that the knapsack should have been inventoried as a unit rather than opened and itemized is confined to the facts before us. If a container which is to be inventoried is not securely closed so that the articles within could possibly fall out, it may be wiser for police to itemize the articles. See United States v. Neumann, 585 F.2d 355 (8th Cir.1978). And, if police have some reason to believe a container which is to be inventoried holds instrumentalities which could be dangerous even when sitting idly in the police locker, the police may, and should, inventory the contents of the container.
See also, State v. Kaluna, supra; Reeves v. State, 599 P.2d 727, 735-736 (Alaska 1979) (cases construe search too intrusive under their state constitutions.)
However, in Mooney v. State, 243 Ga. 373, 254 S.E.2d 337 (1979), the court held that the police lawfully acquired possession of Mooney's luggage (no impounded vehicle involved). The police inventoried the contents of the luggage for weapons and contraband, which was standard police procedure, to protect themselves from any weapon that might be in the belongings that arrestees might call for. Past experience had turned up drugs and razor blades hidden in folded paper so the police unfolded paper which had been taken from a plastic shopping bag. The items were also inventoried. The court concluded that Opperman and the fifth circuit cases cited therein recognized the propriety of opening and inventorying the contents of any container. 254 S.E.2d at 344. Mooney stated that although Chadwick necessarily impinged on an inventory search of luggage to some extent, the question after Chadwick was "whether officers were truly pursuing an investigatory or inventory search." 254 S.E.2d at 346. The court held that the search was reasonable under all the circumstances because the officers were in good faith carrying out an inventory procedure without investigative intent and therefore, the search was not violative of Mooney's Fourth Amendment rights. 254 S.E.2d at 346. See also, Dearing v. State, 393 N.E.2d 167, 171-173 (Ind. 1979) (search fulfilled reasonable governmental purpose when officer opened suitcases at bus station pursuant to "normal property room" policy after officer requested by defendant to retrieve suitcases from bus station and under the circumstances, officer entitled to be "wary" of contents).
Finally, another line of thought simply takes the view that Chadwick did little or nothing to affect the suggestion in Opperman that it was permissible to inventory the contents of suitcases taken from impounded vehicles. E.g., People v. Merchant, 86 Mich. App. 355, 272 N.W.2d 656, 658-659 (1979).
In balancing the respective interests here, we conclude the scope of the search was reasonable. Great weight should be accorded the governmental purpose shown here because of the vital interest of the state in protecting the physical well-being of officers and detainees at the jail. This type of interest has led the Court in the past to justify as "reasonable" other limited intrusions into an individual's privacy interests. E.g., Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We think the cases representing the Bloomfield view fail to sufficiently emphasize the interests at stake. Although the chance of danger might be slim, the danger itself could be great, perhaps fatal. Also, we think the Bloomfield rationale inadequately considers the potential for danger. It would be unreasonable to require every officer who came in contact with luggage from the property room, in any number of needless-to-mention circumstances, to ponder whether the luggage he carries contains a loaded gun, which might discharge if dropped, or be sought by any number of unknown persons, whether or not he has it in his possession. It may not be administratively feasible to implement security measures for the *251 protection and retrieval of personal property equal to that likely exercised in connection with separate weapon storage. Supervised access would not alleviate danger if a prisoner were to suddenly retrieve his gun rather than his clothes.
We find our previous opinions in State v. Southwell, 369 So.2d 371 (Fla. 1st DCA 1979), and Liles v. State, 375 So.2d 1094 (Fla. 1st DCA 1979), distinguishable. There the search in each instance was for contraband. Neither was a protective search for weapons and in neither did the court entertain the theory that valid inventory searches were conducted. In Southwell, the defendant had requested that he be allowed to deposit his overnight bag in one of the lockers at the airport rather than that it be transported with him to the jail. In Liles, the police impounded defendant's truck in a parking lot and made what they called an inventory search of it, including a satchel contained in it. The satchel was in the possession of the police at the parking lot and defendant no longer had access to it. It had not been deposited in the property room at the jail where the defendant would be allowed access to it, in accordance with established procedure, as in the case sub judice.
We hold that Officer Dekle undertook a valid weapon search of Delatte's luggage pursuant to routine procedure and incident to the safe storage of weapons which likely could have been contained therein,[4] considering that the arrestee was lawfully taken into custody by police who found it reasonably necessary to take and retain custody of Delatte's personal possessions under circumstances that negate a finding that there was an exploratory search or any other search not motivated by the desire to reasonably execute a legitimate governmental purpose.
AFFIRMED.
LARRY G. SMITH and SHIVERS, JJ., concur.
NOTES
[1] We believe a fair reading of the record indicates that the routine searches were conducted to safeguard the jail against incoming weapons as well as incoming contraband. Transcript, p. 8.
[2] We accept the trial court's finding that the evidence in this regard merely indicated that some belongings might inadvertently escape a routine protective search, and that this fact did not mean that Delatte's bag was not searched as part of the routine procedure.
[3] In this case, the term is a misnomer because the contents of the bag were not "inventoried." However, it will be seen that the determination of whether the search here was constitutional is measured by the considerations applicable to classic inventory cases.
[4] The arrestee being detained for criminal activity has a long tradition of armed violence. Terry v. Ohio, supra, 392 U.S. at 23-24, 88 S.Ct. at 1881.