398 So.2d 908 (1981)
Robert Reid KNIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. VV-474.
District Court of Appeal of Florida, First District.
May 4, 1981.
Rehearing Denied June 9, 1981.
*909 Robert W. Elrod, Jacksonville, for appellant.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Judge.
On Knight's appeal we identify constitutional standards for a warrantless police search into suitcases, boxes, and other closed containers found during a more superficial inventory of property within a seized automobile. A general inventory of automobile contents is justified by showing that the police had a caretaking responsibility for those contents, derived from their legitimate impoundment of an automobile upon arresting its driver. But a more intrusive warrantless search within closed containers, for no more weighty cause than to list their contents, may invade a constitutionally protected area of privacy and so be prohibited. In Knight's case the police made that more intrusive inventory search into a latched vinyl case found between the front bucket seats, which by location, design, and surroundings announced its contents as music tape recordings like the ones then playing on the automobile tape deck and scattered around the case. We hold Knight had no expectation of privacy in the contents of such a self-identifying container, and we sustain as reasonable the search and consequent seizure of the cocaine found in the case.
Knight appeals from his conviction for trafficking in cocaine after pleading no contest and reserving an appeal from the trial court's denial of his motion to suppress. In the early morning hours, Officer Titra lawfully arrested Knight for driving his Corvette while intoxicated and placed him in the rear compartment of his patrol car. To ready the Corvette for towing out of the traffic lane it occupied, Officer Titra entered the car and began to fill out a standard automobile inventory card, normal procedure for the Orange Park Police Department. This "vehicle storage report" required the officer to check off any items of value left in a vehicle, such as spare tire, radio, and tape deck. The form also called for listing the number of tapes left in the car. The purpose of making the inventory search at that time, the officer said, was to prepare a list for the tow truck driver assuming responsibility for items in the report.
When Officer Titra entered the Corvette, one tape was playing in the tape deck and several others lay on the floorboard. He counted those and then opened what he took to be a storage case for tapes sitting between the bucket seats, in order to count the additional tapes it contained. This latched but unlocked triangular-shaped case, measuring 18 1/2 inches long, 7 inches deep and from 2 1/2 to 7 1/2 inches wide, contained no additional tapes, but did contain baggies of cocaine and other contraband.
As a preliminary matter, we note there is no contention that exigent circumstances  such as probable cause to believe the car or the case contained explosives, weapons or other dangerous materials  justified the warrantless search of the Corvette or the contents of the case. The validity of the search depends on some other analysis.
We disagree with appellant's first contention that the police had no legitimate caretaking responsibility requiring a general inspection and inventory of the property found in the car, including the tapes case itself. Warrantless automobile inventory *910 searches are authorized if they meet federal and state constitutional requirements of reasonableness.[1]South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Urquhart v. State, 261 So.2d 535 (Fla. 2d DCA 1971), cert. den., 266 So.2d 349 (Fla. 1972); Godbee v. State, 224 So.2d 441 (Fla. 2d DCA 1969). Generally speaking, an inventory search is justified as a reasonable consequence of impoundment when
under routine police procedure it is essential when impounding a car to inventory it and its contents for preservation thereof as well as to insulate the police and garage owner from responsibility in the event of theft or destruction. (Citation omitted) Fields v. State, 369 So.2d 603, 605 (Fla. 1st DCA 1978).
See also Altman v. State, 335 So.2d 626 (Fla. 2d DCA 1977); Jones v. State, 345 So.2d 809 (Fla. 4th DCA 1977). Here a reasonable need for impoundment was shown. The Corvette was parked in a traffic lane of a six-lane highway; the driver was under arrest for driving while intoxicated; it was yet dark, and the car posed a hazard or nuisance to traffic, especially to trucks making early morning deliveries. Cf. G.B. v. State, 339 So.2d 696 (Fla. 2d DCA 1976). No one else, such as a sober passenger, was present and able to move the car. Cf. Jones, supra; Session v. State, 353 So.2d 854 (Fla. 4th DCA 1977); Altman, supra. On conflicting evidence the trial court evidently found Knight made no request or there was no opportunity for someone else to assume responsibility for the Corvette; and though the police did not ask Knight if he preferred some arrangement other than the police-ordered towing, that is not required. Compare State v. Dearden, 347 So.2d 462 (Fla. 2d DCA 1977) with Chuze v. State, 330 So.2d 166 (Fla. 4th DCA 1976).
Given that reasonable basis to impound the Corvette, Orange Park police procedures also reasonably required a pre-towing inventory of its contents, to protect Knight's property from loss and the police and towing company from claims of loss. Opperman, supra. Thus were Knight's music tapes properly inventoried; they represented a not inconsiderable investment and were readily subject to theft or loss.
The legitimate police interest in accounting for Knight's music tapes, whether in plain sight or within the tapes case, belies Knight's contention that the search within was pretextual. Cf. Chuze, supra; Benton v. State, 329 So.2d 385 (Fla. 1st DCA 1976). The real issue here is whether that reasonable police interest in inventorying the contents of the tapes case was overcome by a constitutionally superior privacy right in Knight. Guided by United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and interpretative decisions, we find that Knight had no countervailing privacy right in the contents of the tapes case, precisely because all outward appearances suggested, and the police reasonably assumed, that the case contained only music tapes, items in which Knight had no constitutionally *911 recognized expectation of privacy.
Chadwick and Sanders held that the "automobile exception" to the warrant requirement, justified by the inherent mobility of cars,[2] does not permit warrantless searches of car-carried luggage after the police have it firmly in their control. Chadwick invalidated a warrantless search of a locked footlocker taken from an automobile, holding that the owner has a greater expectation of privacy in the contents of luggage than in property visible inside a car:
Luggage contents [unlike autos] are not open to public view ...; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile. 433 U.S. at 13, 97 S.Ct. at 2484, 53 L.Ed.2d at 549.
Sanders extended the Constitution's protection to an unlocked suitcase removed from the trunk of a taxi. The Court again emphasized that one is likely to place private possessions in a suitcase as a "repository for personal items when one wishes to transport them" by car. In order to search "personal luggage" found inside an automobile without warrant, the Court held, police must find some exception to the warrant requirement other than the "mobile automobile" exception.[3]
Neither Chadwick nor Sanders involved an inventory or police caretaking search. It therefore may be suggested that the priority there given to a neutral magistrate's determination of probable cause is no impediment to inventory searches, which are not justified on the basis of probable cause in the usual sense. See Delatte v. State, 384 So.2d 245, 246-47 (Fla. 1st DCA 1980).[4] But the constitutional norm is that a neutral magistrate, not the police, should if possible decide when a search should be conducted; and the extent of one's privacy interest in the contents of closed luggage presumably does not vary depending on the purpose of the proposed search. See Note, What's Reasonable about an Inventory Search? 39 La.L.Rev. 995 (1979). For that reason, apparently, some courts have concluded that the Chadwick-Sanders privacy concern must be dealt with in justifying inventory or other police caretaking searches.[5] We too consider it necessary to *912 evaluate Knight's privacy interests in the tape case in determining the reasonableness of the inventory search within the case.
In Sanders, the Court found protected expectations of privacy in "personal luggage" or "repositor[ies] for personal items when one wishes to transport them" but did not identify what containers other than a suitcase are "personal luggage." The Court conceded there would be "difficulties" in determining which "parcels" taken from an automobile require warrant prior to search, but said none would be required in the following instances:
Not all containers and packages found by the police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant. 442 U.S. at 764 n. 13, 99 S.Ct. at 2593 n. 13, 61 L.Ed.2d at 245 n. 13.
Thus guided by the general principle that one can have no reasonable expectation of privacy in the contents of a container designed so that it announces that its contents are impersonal, something other than clothes, medications or business papers,[6] courts have endeavored to apply the Chadwick-Sanders search limitations on a case-by-case basis. Unaided by any additional guidance from the Supreme Court that some desire,[7] the lower courts have concluded that the Sanders warrant requirement applies to containers that are like the luggage we encounter at airport baggage claims: brown leather tote bag,[8] overnight bag,[9] suitcase,[10] leather or vinyl satchel,[11] *913 briefcase,[12] portfolio,[13] knapsack,[14] and, for the traveling student, backpack.[15] In other instances, the courts have protected the contents of containers, such as purses[16] and shaving kits,[17] that while not "luggage," are widely known to contain highly personal items. Not deserving of Sanders protection are transparent or flimsy containers that occasionally are used to transport personal items, but are not commonly so used. The District of Columbia Court of Appeals[18] over dissent,[19] and other courts,[20] for instance, have concluded that paper bags are not personal luggage. Nor are flimsy containers like department store boxes[21] or paper cups.[22] However, if the owner objectively signals his clear expectation of privacy in these impersonal or flimsy containers, greater protection of his rights may be required.[23]
Inevitably, some cases involve containers that are neither luggage in the conventional sense of the word nor flimsily constructed receptacles like paper bags. Here, the courts may permit search if the container announces that its likely contents are not personal possessions in which one would have a reasonable privacy interest. Thus in the recent case of United States v. Markland, 635 F.2d 174 (2d Cir.1980), the Second Circuit upheld the warrantless search of a zippered thermal bag with "Schlitz" markings on it because the police officer had every reason to believe the bag contained the beer and sandwiches such a container is customarily used to store.
We find this reasoning persuasive. Just as the officer in Markland expected to find beer and sandwiches in which the car owner had no privacy interest, Officer Titra assumed the brown vinyl case he encountered in Knight's car contained musical tapes: with one tape playing on as he conducted his inventory, he found several tapes lying loose on the floor and a case of proper size and shape to hold them, positioned between the bucket seats where it would be easily accessible to a driver changing his selection in the tape deck. Officer Titra reasonably might have expected such a case to contain loose change, maps, parking stubs and other impersonal litter found in a "car caddy" or glove compartment, but he certainly had no reason to believe it contained clothes, medications or other highly private possessions. Nor did Knight take any steps signalling any heightened privacy expectations in this container. We hold that Officer Titra, acting *914 on a legitimate caretaking responsibility, conducted a constitutionally reasonable search of a container that announced its contents as music tapes in which privacy rights are minimal.
Knight's second point on appeal, challenging the constitutionality of Section 893.135, Florida Statutes (1979), is foreclosed by the Supreme Court's recent decision upholding the constitutionality of this drug-trafficking statute under similar attack. State v. Benitez, 395 So.2d 514 (Fla. 1981). See also Stehling v. State, 391 So.2d 287 (Fla. 1st DCA 1980).
AFFIRMED.
THOMPSON, J., and WOODIE A. LILES, (Retired) Associate Judge, concur.
NOTES
[1] The Fourth Amendment to the U.S. Constitution, held applicable to the States through the Fourteenth Amendment in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Article I, Section 12 of the Florida Constitution provides:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures ... shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized ... and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.
[2] Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). For a recent general summary of current law applicable to automobile searches, see Schrader, The Warrantless Vehicle Stop and Search, 41 Ala. Lawyer 365 (1980).
[3] The Court stated:

In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where  as in the present case  the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay search thereof until after judicial approval has been obtained. 442 U.S. at 766, 99 S.Ct. at 2594, 61 L.Ed.2d at 246.
[4] Delatte, which upheld the warrantless search of a travel bag, is distinguishable from the case at hand. Delatte upheld the "protective" search of a travel bag prior to storage in the jail where the defendant would be allowed access to it. In such a case, the government has a strong interest in protecting the police and others from the danger that the bag contained weapons or explosives. No similar considerations affect this case.
[5] E.g., Cobb v. State, 378 So.2d 82 (Fla. 3d DCA 1979), cert. den., 388 So.2d 1111 (Fla. 1980); United States v. Markland, 635 F.2d 174 (2d Cir.1980); United States v. Bloomfield, 594 F.2d 1200 (8th Cir.1979); United States v. Neumann, 585 F.2d 355 (8th Cir.1978); State v. Pace, 171 N.J. Super. 240, 408 A.2d 808 (1979), cert. den., 84 N.J. 384, 420 A.2d 314 (N.J. 1980). See also W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 7.4 at 86 (Supp. 1981), where the author recognizes that there is authority for the proposition that containers other than luggage may be opened during an inventory search.
[6] Warrantless searches of containers meeting this description were upheld in United States v. Gaultney, 581 F.2d 1137 (5th Cir.1978), cert. den., 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 259 (red Scrabble box taped shut); Wyss v. State, 262 Ark. 502, 558 S.W.2d 141 (1977) (tool box).
[7] The dissenters in Sanders contended:

The Court today goes farther down the Chadwick road, ... and, while purporting to clarify the confusion occasioned by Chadwick, creates ... only greater difficulties for law-enforcement officers, for prosecutors, for those suspected of criminal activity, and, of course, for the courts themselves. Still hanging in limbo, and probably soon to be litigated are the briefcase, the wallet, the package, the paper bag, and every other kind of container.
....
[S]uppose the arresting officer opens the car's trunk and find that it contains an array of containers  an orange crate, a lunch bucket, an attache case, a duffelbag, a cardboard box, a backpack, a totebag and a paper bag. Which of these may be searched immediately, and which are so "personal" that they must be impounded for future search only pursuant to warrant? The problems of distinguishing between ... "personal luggage" and other "containers and packages" ... will be legion. The lines that will be drawn will not make much sense in terms of the policies of the Fourth and Fourteenth Amendments, 442 U.S. at 768, 772, 99 S.Ct. at 2595, 2597, 61 L.Ed.2d at 248, 250.
See also Comment, 55 Wash.L.Rev. 871, 881-83 (1980) ("If the Court anticipates some gradation of the privacy interest in various containers and packages, then specific guidelines for determining the level of the privacy interest and the corresponding content of the fourth amendment are in order."); Comment, 11 Seton Hall L.Rev. 121, 134-35 (1980) ("The most troubling aspect of the Sanders decision is the recognition that different types of containers, depending on their nature, will be accorded inconsistent levels of fourth amendment protection... . The determinative factor will, in most cases, be a judge's subjective opinion that a certain type of container can support a reasonable expectation of privacy.")
[8] United States v. Benson, 631 F.2d 1336 (8th Cir.1980).
[9] State v. Southwell, 369 So.2d 371 (Fla. 1st DCA 1979).
[10] Haugland v. State, 374 So.2d 1026 (Fla. 3d DCA 1979), cert. den., 390 So.2d 360 (Fla. 1980).
[11] Liles v. State, 375 So.2d 1094 (Fla. 1st DCA 1979), cert. den., 383 So.2d 1203 (Fla. 1980).
[12] E.g., United States v. Calandrella, 605 F.2d 236, (6th Cir.1979), cert. den., 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979); Cobb v. State, 378 So.2d 82 (Fla. 3d DCA 1979); Webb v. State, 373 So.2d 400 (Fla. 1st DCA 1979), cert. den., 383 So.2d 1204 (Fla. 1980) (by implication).
[13] United States v. Miller, 608 F.2d 1089 (5th Cir.1979), cert. den., 447 U.S. 926, 100 S.Ct. 3020, 65 L.Ed.2d 1119 (1980).
[14] United States v. Bloomfield, 594 F.2d 1200 (8th Cir.1979).
[15] United States v. Meier, 602 F.2d 253 (10th Cir.1979).
[16] Ulesky v. State, 379 So.2d 121 (Fla. 5th DCA 1979).
[17] Moore v. State, ___ Ark. ___, 594 S.W.2d 245 (1980); cf. Cooper v. Commonwealth, ___ Ky. ___, 577 S.W.2d 34 (1979) (electric razor case is not personal luggage).
[18] United States v. Ross, 27 Cr.L.Rptr. 2169 (D.C. Cir.1980).
[19] In his concurring and dissenting opinion, Judge Bazelon suggests that the majority's conclusion that there can be no expectation of privacy in a brown paper bag is attributable to "acute ethnocentric myopia." In some subcultures, he argues, paper bags are often used to carry intimate personal belongings. United States v. Ross, 27 Cr.L.Rptr. 2169, 2171 (D.C. Cir.1980).
[20] E.g., United States v. Mackey, 626 F.2d 684 (9th Cir.1980); United States v. Jimenez, 626 F.2d 39 (7th Cir.1980); Webb, supra n. 12.
[21] United States v. Neumann, 585 F.2d 355 (8th Cir.1978).
[22] People v. Diaz, 101 Cal. App.3d 440, 161 Cal. Rptr. 645, 26 Cr.L.Rptr. 2510 (1980) (opaquelidded cup from fast food restaurant).
[23] United States v. Dien, 609 F.2d 1038 (2d Cir.1979), aff'd on reh., 615 F.2d 10 (1980) (invalid warrantless search of cartons that had been taped shut and placed behind plywood barrier in van with windows painted over).