GLICKSTEIN, Judge,
dissenting.
This is an appeal from a conviction for trafficking in cocaine and possession of *164 marijuana. I would reverse and remand, with direction to discharge the defendant, because of the illegality of the search upon which his conviction was based. I concur in Judge Anstead’s opinion insofar as it discusses the merits, but have no objection to consideration of this case en banc.
Deputies Vickie Cutcliffe and Joseph Da-miano testified at a hearing on appellant's motion to suppress physical evidence that they approached appellant while he was seated on a northbound Greyhound bus and asked if they could speak with him a few moments. He agreed. Damiano explained they were narcotics officers charged with trying to stop drug smuggling. They asked for his cooperation by allowing them to search his two bags, which were in the rack overhead and which he had previously pointed out as his. Ms. Cutcliffe testified Damiano indicated to appellant he had a right to refuse, and Stone did refuse.
The deputies were wearing jeans and pullover shirts, with green jackets that said Broward County Sheriffs Office on the back and a patch with the same legend on the front. Both had weapons, but they were concealed.
Officer Cutcliffe said Stone could have left the bus if he wanted to, and was not blocked by either of the officers.
After Stone refused consent to a search of his luggage, Damiano asked him if he would allow a drug dog to check his bags. Stone said yes, but he wanted to tell them there was some marijuana in a coat pocket in one of the bags, but he couldn’t remember which bag, and the dog would find it.
Because Stone had admitted he was in possession of an illegal drug, he was no longer, in Officer Cutcliffe’s mind, free to leave. The officers asked him to come off the bus with them. Officer Cutcliffe believed she took possession of his two bags, and the two officers walked him off the bus.
Outside the bus, Deputy Bresinski was already present with the drug dog. This was part of the deputies’ daily routine. Bresinski lined up Stone’s bags with a few others and ran the dog over the bags. Stone was standing on the sidewalk three or four feet from the bags. The dog scratched, bit and pushed with his nose around both of Stone’s bags. According to Deputy Cutcliffe, Stone was then handcuffed, and Deputy Cutcliffe at that point also relieved Stone of a small amount of marijuana he had previously told her he had in a pocket, Deputy Cutcliffe opened one of Stone’s bags herself and found a few little ziplock bags of marijuana, five seeds and some marijuana residue. Detective Damiano opened the slightly larger bag and found two kilo packages of cocaine. This search was done at the bus station, but the packages were not opened there.
Deputy Cutcliffe said the bags were searched in order to look for weapons and to preserve evidence, to make sure nothing got destroyed. On cross-examination she said the bags were already in her control once Stone said there were drugs in one of them, and she would not allow Stone to have access to them.
Deputy Damiano’s testimony was very similar to Deputy Cutcliffe’s, but he said Stone was not physically handcuffed at the time his luggage was searched. He recalled that Stone was two to three feet from the bags. Deputy Bresinski did not recall how close Stone was to the bags, but seemed to think it unlikely he was that close, because Bresinski needs room when working the dog. However, Bresinski was concentrating on the dog, not other matters.
Stone was charged by information with trafficking by possession of more than 400 grams of cocaine and possession of less than 20 grams of marijuana. After a hearing, much of the testimony at which was summarized above, and submission of a legal memorandum, the court denied appellant’s suppression motion.
Stone was tried to a jury. The arresting deputies’ testimony on the search was much the same as at the suppression hearing. They also testified Stone told them on his arrest he thought he was transporting marijuana to Philadelphia, for which service he had been paid $1,000. His latent *165 fingerprints were found on the tape and newspaper in which the cocaine was wrapped. Other, unidentified latent prints were found on the opaque inner wrappings. The substance was chemically identified as cocaine. Each package contained a little less than a kilo. The two little quantities of marijuana totaled four grams.
Stone was found guilty as charged and sentenced to fifteen years on the cocaine count — a mandatory minimum — and to time served on the marijuana count.
The state justified the physical search of appellant’s luggage as a search incident to a lawful arrest. Appellant argues from United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), that “[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.” Id. at 15, 97 S.Ct. at 2485, 53 L?Ed.2d at 551. The Court added in a footnote there can be other justifications for warrantless search of luggage taken from a suspect at the time of his arrest, as, for example, if the officers have reason to believe the luggage contains a dangerous instrumentality such as explosives. In such case it would be foolhardy to take the luggage to the station house without opening it and disarming the weapon. Id. at n. 9. The Chadwick Court stated that when no exigency is shown to support the need for an immediate search, the Fourth Amendment protects the privacy interests of the suspects, pending evaluation by a neutral magistrate, albeit his issuance of a warrant is reasonably predictable. See id. at 15-16, 97 S.Ct. at 2486, 53 L.Ed.2d at 550-51.
The other side of the coin, so to speak, from Chadwick is found in Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Under Chi-mel it is permissible to make an on-the-spot search of the area within the immediate control of an arrested person; and this includes packages or luggage carried by an arrested person, see Draper v. United States, 358 U.S. 307, 310-11, 79 S.Ct. 329, 331, 3 L.Ed.2d 327 (1959). There are court of appeals cases predating Chadwick which approved such searches even if the arrested person had been handcuffed and was no longer able to gain access to the items being searched. E.g., United States v. Eatherton, 519 F.2d 603, 609-10 (1st Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975); United States v. Kaye, 492 F.2d 744 (6th Cir.1974). Other pre-Chadwick cases used the Chimel reasoning as the basis for approving search of an arrested person’s suitcase or brief case that was merely close by and not touching the arrested person. E.g., United States v. French, 545 F.2d 1021 (5th Cir.1977). I believe Chadwick changed the law in this respect, as Justice Blackmun’s dissent from Chadwick tends to bear out. Chadwick, 433 U.S. at 23 n. 5, 97 S.Ct. at 2490 n. 5, 53 L.Ed.2d at 556 n. 5. Chimel should not be read to supply a talisman for search incident to arrest.
Two somewhat more recent court of appeals cases shed light on how Chadwick applies. In United States v. Hill, 730 F.2d 1163 (8th Cir.), cert. denied sub nom., Frazier v. United States, 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984), Hill was unlawfully arrested in his home. Allegedly, after being escorted out of the house, he asked to return to his bedroom, and agreed to have an officer there with him. The officer testified at the suppression hearing that he asked Hill whether the suitcase in the bedroom was his, and Hill said it was. The officer opened it without asking Hill’s permission, purportedly out of concern for his own safety. Hill was about five feet away at the time. The federal district court found that the officer apparently assumed Hill wanted to take either the suitcase or some of its contents with him to jail, and the search was justified under Chimel because incident to Hill’s arrest, and its purpose could have been to prevent Hill from acquiring a weapon or destroying evidence within his immediate control. The appellate court, while accepting the district court’s assessment of Hill’s *166 proximity to the suitcase, found the officer's search of the suitcase unreasonable under Chadwick. The appellate court feared Hill had been deliberately put near the suitcase so that the police would have a reason to search it; but even if this was untrue, the appellate court held the search of the suitcase was not conducted in an area within Hill’s immediate control and incident to his arrest. The court pointed out that even under Chimel there is no justification incident to arrest for routinely searching through closed or concealed areas of the room in which the arrest takes place. Id., at 1167-68, citing 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.
The second case is United States v. Andersson, 813 F.2d 1450 (9th Cir.1987). There a warrantless search of a hotel room in connection with a major drug transaction of which the agents were reliably informed and some of the parties to which had just been apprehended was found to be justified by exigent circumstances. When the agents entered the room they found one of the suspects standing next to a bed on which were two suitcases. One of the suitcases was open and contained cocaine. After arresting the suspect, the agents opened the other suitcase and found more cocaine. The defendants argued the search of the second suitcase was illegal. The appellate court held that the agents had probable cause to arrest the man and the search of the second suitcase was properly incident to the arrest, as it took place contemporaneously with the arrest, and the arrestee, who was close to the suitcase, might be able to reach into it to retrieve a weapon or destroy evidence. The appellate court did not accept the appellants’ argument that the suitcase search did not occur until considerably after the man’s arrest, and therefore, under Chadwick, a warrant was required, because there was no evidence of the lack of contemporaneity on the record. 813 F.2d at 1456.
Here the luggage was clearly not in contact with appellant at the time of the physical search thereof. Appellant was under arrest. Depending on which officer’s recollection one finds more credible, appellant may or may not have been handcuffed at the time. One officer put him three or four feet from the luggage; the other, two or three feet. It is debatable whether the search of the luggage was, in terms of Chadwick, removed in time or place from the arrest; but for certain there were not exigent circumstances. There was no reason to believe that a bomb or something of that sort was in the luggage; and is it at all reasonable to suppose that Stone could grab the luggage and run, or get it open and pull a gun out of it, or destroy the contraband, with three officers in the immediate vicinity, two of them no doubt keeping a close eye on Stone? Unless Chi-mel and Chadwick are read mindlessly, the mere proximity of Stone to the luggage at the time of the physical search of the two suitcases does not justify the warrantless search. As I understand Chadwick, once luggage is reduced to the exclusive control of the law enforcement officers, search ceases to be an incident of arrest unless there is a genuine danger the arrestee may regain access. It seems sophistical in this case to pretend such a danger existed.
The state and the majority support the physical search of the luggage by analogy to Savoie v. State, 422 So.2d 308 (Fla.1982). Savoie negotiated with a police officer, offering a bribe in exchange for dropping of criminal charges against an associate of Savoie. The officer prepared simulated evidence against that suspect and arranged to meet Savoie in a certain motel room. In an adjacent room were several law enforcement officers. The officer gave Savoie the “evidence” in exchange for $5,000 in cash. Savoie placed the evidence in an attache case, which he locked, and left the room with the ease. Down the hall, one of the other officers arrested Savoie, who was carrying the locked case. The officer searched Savoie, handcuffed him and took control of the attache case. During the search of Savoie the officer found the key to the attache case. He immediately opened the case at the scene of the arrest.
The Florida Supreme Court approved the trial court’s refusal to suppress the contents of the attache case. The motion was not made until much testimony of the ar *167 resting officer had been heard at trial. The trial court cited Chadwick as its authority, holding that the search of the attache case was reasonable because incident to a valid arrest. The district court affirmed on the ground the right to move suppression had been waived because not offered before trial, and thus appeal of any error had not been preserved. The Supreme Court held the motion could be heard at the court’s discretion at trial, as it was, and the appeal had been preserved. It upheld the denial of suppression on the basis of Chadwick and also New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (when officer has made lawful custodial arrest of automobile occupant he may as contemporaneous incident of the arrest search the passenger compartment of the car and examine the contents of any containers found there).
I have reservations about the pertinence of Belton, where the automobile exception is clearly operative. See the recent Florida Supreme Court opinion in State v. Wells, 539 So.2d 464, 467 n. 2 (Fla.1989) (discussing the distinction drawn between automobile search, and luggage search pursuant to Chadwick, in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). Nevertheless, the search of Sa-voie’s attache ease was proper pursuant to Chadwick, because Savoie had the case on his person when he was arrested, and the officer unlocked and searched.it immediately. Under Chadwick, as the Savoie Court pointed out, it is not required that there be probable cause to believe there is a weapon in the container or the arrestee is about to destroy the evidence, if otherwise the search is incident to the arrest.
Savoie is distinguished from the instant ease by the fact that Savoie was carrying the case at the time he was stopped and arrested, and the contents of the case were examined at once. The Savoie Court clearly hitched its holding to the fact Savoie was carrying the case. Here, on the other hand, one or another of the officers had taken the suitcases from the overhead rack and carried them out of the bus; the sniff lineup had occurred, and the arrestee had been placed in custody and by some of the testimony was in handcuffs. Those are not the circumstances of the legal search of a container incident to an arrest, as I understand Chadwick. I find no justification for legitimizing a warrantless search beyond the limits of Savoie.
The facts of the instant case are more nearly like those in Nease v. State, 484 So.2d 67 (Fla. 4th DCA 1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1982, 95 L.Ed.2d 822 (1987). There a man who was under articulable suspicion of carrying drugs had been stopped for questioning pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). After giving the officers permission to search his luggage, the man fled. Although methaqualone found on his person after he was chased and caught was held to have been obtained in a legal search following arrest — his flight having transformed articulable suspicion into probable cause — the cocaine found in his luggage was suppressed as the product of an illegal search. This court determined that the man’s flight constituted withdrawal of his consent to search his luggage; and, pursuant to Chadwick, the contents of his closed luggage were protected by the Fourth Amendment. 484 So.2d at 70.
The state also urged in the instant case that the search of Stone’s luggage is sustainable as an inventory search. It is true that when a person allows the police to take his personal effects into custody and inventory them, the arrestee has allowed his privacy interest to dissipate, Lightbourne v. State, 438 So.2d 380, 387 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); but that has to do with belongings on the arrestee’s person. Luggage is included under the inventory search doctrine when found in a car that has been legally impounded, but inventory search as a pretext for looking for incriminating evidence is reprehensible, Fields v. State, 369 So.2d 603, 605 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1366 (Fla.1979), cited in Delatte v. State, 384 So.2d 245, 247 (Fla. 1st DCA 1980). In Delatte the appellant was taken into lawful custody when in possession of his bag. The bag accompanied him to jail because *168 there was nothing else to be done with it. Because of the danger of storing it at the police station without knowing what was in it, it was held that an inventory search of its contents was not in violation of De-latte’s Fourth Amendment rights.
Appellee argued that once Stone was properly booked an inventory search of the bags could legally have been made and there would have been the same result— discovery of the contraband. One could as well argue that there was no violation of a Fourth Amendment protection because once a warrant had been obtained a search of the luggage could have been made and the contraband would have been discovered. Both lines of reasoning are flawed.
The reason for the limitations on search imposed by Chadwick is not that but for the improper invasion of the arrestee’s Fourth Amendment rights the evidence would not have been discovered; the reason is to promote regard by law enforcement authorities for the constitutional protections against unreasonable search and seizure. Thus in Chadwick it was obvious that a warrant could readily have been obtained; yet, because it was not obtained, the contents of the foot locker could not be used as evidence. Here, the' fact that a subsequent inventory search would have turned up the same contraband cannot justify a search that was actually conducted for the purpose of finding the actual drugs admitted to be there by the arrestee and the drugs sniffed out by the drug dog. It was not an inventory search.
If the inevitable discovery exception could be applied in the instant case as it was in Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), cert. denied, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985), and in State v. McLaughlin, 454 So.2d 617 (Fla. 5th DCA 1984), the exception would effectively swallow up the exclusionary rule. Anytime property in a closed container, belonging to an arrestee, came into the hands of law enforcement authorities, they could evade obtaining a search warrant, and open the container, simply by saying they would have found out what was inside anyhow when an inventory search was done. The constitutional fathers cannot have intended such a result, nor, in my opinion, is that what the Williams court intended.
The instant case is distinguished in a critical way from Williams. In Williams a totally independent search was going on simultaneously, conducted by numerous volunteers, at the time the police obtained information on the body’s whereabouts in violation of Williams’ constitutional right to advice of counsel. The instant case differs from McLaughlin in that there no arrest was involved, the owner was not definitely known, and McLaughlin was entitled to no privacy expectation considering the box was found in a lot to which the whole world had access.
LaFave urges that application of the inevitable discovery exception requires the courts to use a surgeon’s scalpel rather than a meat axe. See 4 W.R. LaFave, Search and Seizure § 11.4(a) (1987). Mechanical application of the inevitable discovery doctrine will encourage unconstitutional short cuts. It should not be applied where the police have acted in bad faith to speed up discovery of the evidence, or it will erase the Fourth Amendment search warrant requirement.
Finally, attention is called to Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). While that case may seem on the surface to support the state, I find the opinion to be helpful to appellant, in that the Court there distinguishes inventory search of an arrestee’s personal effects found in an automobile, which was the case in Bertine, from search of closed luggage for investigative purposes, as in Chadwick, supporting the conclusion that Chadwick remains good law.