329 So.2d 385 (1976)
Floyd BENTON, Appellant,
v.
STATE of Florida, Appellee.
No. X-181.
District Court of Appeal of Florida, First District.
April 2, 1976.
Ben W. Thompson, Jr., Thompson & Gilleland, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
*386 RAWLS, Acting Chief Judge.
Appellant-defendant Benton appeals a judgment and sentence of possession of a firearm by a convicted felon. Once again we are confronted with the legality of a search of an automobile incident to an arrest for a traffic violation. Thus, the primary point now presented is that the trial court erred in not granting Benton's motion to suppress.
Leon County Deputy Sheriff Chick, the arresting officer, and Auxiliary Deputy Sheriff Grant were the principal witnesses for the state. Chick testified that Benton drove his automobile through a radar set up at a speed of 72 miles per hour resulting in his stopping Benton. He further testified:
"I approached the automobile, had Mr. Benton get out and follow me back to my car and sit in my car instead of writing the citation on the highway... .
......
"He signed the tickets and we went back to his automobile and he had an invalid inspection sticker; and upon noticing the invalid inspection sticker, I issued another citation for that.
......
"... when Mr. Benton got back in his automobile, he left in a very reckless manner. He sort of spun his car sideways onto the highway ... he proceeded to pick up a little bit more momentum by burning his tires."
Officer Chick then related how he again stopped Benton and advised him that he was going to charge him with reckless driving and take him to the county jail. We further quote from Officer Chick's testimony:
"At this time ... I wanted to secure his car on the road, and I asked Mr. Benton if he would like for me to have his car towed in, or would he like for the other officer which was still following me at the time, which was Doctor Grant, if it would be all right for this other officer to drive his car to the jail for security reasons. He refused.
......
"Doctor Grant watched Mr. Benton as I approached his automobile to secure his car. While we were back there trying to get Mr. Benton to sit down in my car, I smelled alcohol on his breath... .[1]
"I went to his car. I secured the driver's side first, due to oncoming traffic, just took the keys out, opened it up, locked it and went around to the passenger's side, and I opened the door of the passenger side, I looked in the back seat, I looked in the passenger's side in the front seat, and on the floor. I leaned across the seat  I was looking for evidence of alcohol that he had possibly been drinking, to find out what he had been drinking ... I run my hand up underneath the front seat where possibly if he had had a bottle while he was going down the road, or a beer, turning it up, he could have slipped it up underneath the front seat.
"As I ran my hand just a hand's distance underneath the front seat, I felt an object and it turned out to be  [a .357 caliber Ruger Magnum pistol]"
Officer Grant corroborated Officer Chick's testimony: "Then he [Chick] asked Mr. Benton if he wanted to leave his car on the side of the road or to have his car towed to the jail. Mr. Benton said leave it on the side of the road."
The trial court, in denying the motion to suppress, stated:
"THE COURT: The Court feels that under the circumstances the officer had the right to gather, by a cursory examination of the premises immediately occupied by the defendant, for further evidence *387 in the preparation of a case of DWI, that is, a bottle or can or whether it be empty or full or half; and secondly, he not only had a right but had a duty too to at least make a cursory inventory of valuables before securing the vehicle and leaving it on the public roads, for the protection of the defendant's property as well as to protect the police officer from being unduly criticized for missing valuables and things of that sort. So the motion is denied."
In black letter law, the basic rule for warrantless automobile searches and seizures is easy to state: a car may be searched or seized without a warrant if there are both exigent circumstances and probable cause to believe that the car will yield contraband or evidence useful for prosecution of crime.[2] The most fundamental rule in this area of constitutional law is that searches conducted are per se unreasonable subject only to a few specifically established and well-delineated exceptions.[3] Delineated exceptions have been labeled as "hot pursuit", "plain view doctrine", "emergency situation", "consent", "exploratory search", and "inventory search".[4] These labels have been affixed to various factual situations by judges in an effort to resolve the constitutional question of "reasonableness"[5] as to a warrantless search of an automobile. Factors determinative of reasonablenss of incidental searches have included the practicality of obtaining a warrant, facts known to the officer at the time of the arrest, the necessity for effecting a lawful arrest, the motive of the police officer, the prevention of escape or destruction of evidence, the security of the arresting officer, and a rational connection between the search and the crime for which the arrest was made.[6] A search of an automobile without a warrant is not dependent upon being incident to the arrest, but upon the arresting officer having reasonable cause to believe that the "contents of the automobile offend against the law."[7]
That Officer Chick was in close proximity to Benton for a substantial time upon initially stopping him for a traffic violation is without contradiction. And it is equally clear that he did not suspect him of being under the influence of intoxicating liquors to the extent that such condition would impair his ability to drive an automobile, because the officer, after writing traffic tickets, bade Mr. Benton farewell and permitted him to drive his automobile down the road. Certainly, the officer would not have turned a driver suspected to be under the influence of intoxicating liquors loose on the general public. Officer Chick admitted that he was unhappy with Benton's attitude, and justifiably so after Benton "burned his tires" immediately after being released upon his first apprehension. The totality of the circumstances here reflected smack strongly of a pretextual arrest and search pursuant thereto.[8]
The trial judge's observation that "the officer had the right to gather, by a cursory examination[9] of the premises immediately *388 occupied by the defendant", cannot sanitize the instant search. Admittedly, Officer Chick asked Benton what his wishes were concerning the disposition of Benton's automobile. Unlike the line of cases authorizing an inventory search,[10] Officer Chick did not have the vehicle that he searched in his lawful possession. Unlike the car in Godbee, supra, which was illegally parked on a sidewalk and abandoned by its owner, there is no indication that Benton's car was illegally parked or that lawful possession of same was acquired by the arresting officer. The fact that a vehicle is "unattended" is insufficient to authorize a warrantless search.[11] An essential requirement to a valid inventory search is that the police must have taken lawful custody of the vehicle in the first instance. Another essential prerequisite to a valid inventory search is that the police must have acted in good faith in conducting the inventory and must not have used the inventory procedure as a subterfuge for a warrantless search.[12]
The only theory that supports the validity of the incident search is as stated in State v. Gustafson,[13] viz:
"... once a proper arrest is made and the defendant is in custody that a reasonable search may then proceed and if evidence be then discovered reflecting that a crime has been committed or is being committed, the evidence is proper and admissible. This has included contraband upon search of a vehicle on probable cause... ." (emphasis supplied)
This brings us to the critical question: Was there probable cause here to search for contraband? Officer Chick testified that he first stopped Benton at 10:15 p.m., and "I wrote the subject three tickets." Benton was in Officer Chick's presence for approximately twenty-five minutes during this encounter. After Benton departed and when "he stomped it down again and burned rubber", Officer Chick gave chase and stopped him in approximately one mile. On this second occasion, Officer Chick stated: "I approached the subject's vehicle [Benton's] and told him that I was going to take him to the Leon County Jail for the second charge [careless driving and speeding]." As to the charge of driving while intoxicated, Officer Chick testified: "I wasn't determined fully that the subject was completely driving while under the influence that much. His physical control was good. But I knew the subject had been drinking." Officer Chick first charged Benton with DWI after the breathalizer test was taken subsequent to their arrival at the jail.
This record does not support probable cause for the search of Benton's automobile. The trial judge erred in not granting Benton's motion to suppress.
The judgment appealed is reversed with directions that appellant Benton be discharged.
REVERSED.
MILLS and SMITH, JJ., concur.
NOTES
[1] Upon taking Benton to jail and a breathalizer test result of .10, Benton was charged with DWI.
[2] 89 Harv.L.Rev. 835 (1974) citing Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
[3] Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).
[4] United States v. Mapp, 476 F.2d 67 (2nd Cir.1973); State v. Gustafson, 258 So.2d 1 (Fla. 1972).
[5] 25 U.Fla.L.Rev. 239 (Fall 1972), and State v. Gustafson, supra.
[6] 25 U.Fla.L.Rev. 239 (Fall 1972).
[7] Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The court observed: "Only in exigent circumstances will the judgment of the police as to probable cause serve as sufficient authorization for a search."
[8] Graham v. State, 60 So.2d 186 (Fla. 1952); Riddlehoover v. State, 198 So.2d 651 (Fla. App. 3rd 1967) and Chapman v. State, 158 So.2d 578 (Fla.App. 3rd 1963).
[9] The cursory examination, i.e., "open view" doctrine as expressed in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and State v. Ashby, 245 So.2d 225 (Fla. 1971), is not applicable to the factual circumstances in the instant case. Also see State v. Cash, 275 So.2d 605 (Fla. App. 1st 1973), which discusses "plain view" and "inventory" jointly.
[10] Godbee v. State, 224 So.2d 441 (2 Fla.App. 1969); State v. Ruggles, 245 So.2d 692 (Fla. App. 3rd 1971); Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); Annot., 48 A.L.R.3d 537, § 5 (1973), and 26 U.Miami L.Rev. 289, Sec. IV (1972).
[11] Weed v. Wainwright, 325 So.2d (Fla.App. 4th 1975), and In re 1972 Porsche 2 Dr., '74 Florida License Tag ID 91780, 307 So.2d 451 (Fla.App. 3rd 1975).
[12] Annot., 48 A.L.R.3d 537, 544 (1973).
[13] State v. Gustafson, 258 So.2d 1 (Fla. 1972), aff'd, Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).