The Honorable David H. Pingree Secretary Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32301
Dear Secretary Pingree:
This is in response to your request for an opinion on substantially the following questions:
 (1) UNDER FLA. STAT. s 400.314 DOES A NURSING HOME AND LONG-TERM CARE FACILITY OMBUDSMAN COMMITTEE HAVE THE AUTHORITY AND RIGHT TO REVIEW AND INSPECT ALL OF THE RECORDS OF A NURSING HOME OR LONG-TERM CARE FACILITY RESIDENT, INCLUDING MEDICAL RECORDS TO WHICH PRIVILEGE OR CONFIDENTIALITY MIGHT ATTACH, DURING THE COURSE OF A COMPLAINT INVESTIGATION?
 (2) IN LIGHT OF FLA. STAT. s 400.307(2)(b) (e) AND s 400.314(2)(a) (b):
 (A) DOES AN OMBUDSMAN COMMITTEE HAVE AUTHORITY TO CONDUCT GENERAL INVESTIGATIONS NOT RELATING TO ANY SPECIFIC COMPLAINT?
 (B) ASSUMING IT POSSESSES THE REQUISITE AUTHORITY OR IS OTHERWISE AUTHORIZED TO CONDUCT A GENERAL INVESTIGATION, DOES AN OMBUDSMAN COMMITTEE HAVE THE AUTHORITY AND RIGHT TO REVIEW AND INSPECT RESIDENTS' RECORDS, INCLUDING MEDICAL RECORDS?
The statutes to which your questions refer relate to the administrative entry and inspection of nursing home or long-term care facilities pursuant to an investigation to obtain information for investigative purposes and to establish compliance with or violations of Part I of Ch. 400, F.S., and the rights of patients or residents of these facilities. An administrative search or inspection of the records of a facility resident or patient necessarily involves the entry upon and the examination and inspection of the premises of the facility and records kept and maintained by facility, including medical records, pertaining to its patients or residents, individually and as a group. The authority or lack of authority to make such entries and conduct searches or inspections for such purposes circumscribes the assertion or exercise of any authority to examine and inspect the records of an individual patient or resident and would be governed by the same rules of law.
QUESTION ONE
In 1975, the Legislature established one state and eleven district nursing home ombudsman committees to receive, investigate, and resolve complaints against nursing home facilities. Section 24, Ch. 75-233, Laws of Florida. At least one nursing home and long-term care facility ombudsman committee (district ombudsman committee) is to be established in each of the districts of the Department of Health and Rehabilitative Services. Section 400.307(1), F.S. The district ombudsman committees have the duty to (1) serve as third-party mechanisms for the protection of nursing home or long-term care facility residents; (2) discover, investigate and determine the existence of abuse or neglect in such facilities and use the procedures provided for in s 827.09, F.S., when applicable; (3) elicit, receive, respond to, and resolve complaints made by, or on behalf of, nursing home or long-term care facility residents; (4) review all rules and regulations pertaining to nursing home or long-term care facilities; (5) enter any nursing home or long-term care facility, with or without notice, pursuant to an investigation to obtain information regarding a specific complaint or problem; and (6) review Medicaid patients' property and money accounts pursuant to an investigation to obtain information regarding a specific complaint or problem. Section 400.307(2), F.S. The powers of the district ombudsman committees with regard to the resolution of complaints are set forth in s 400.317, F.S., and include making such complaints public together with the committee's recommendations and the response of the affected facility and referring the complaint to the state ombudsman committee. Upon referral from the district ombudsman committee, the state ombudsman committee may make public the complaint, the committee's recommendation and the response of the affected facility. Among other possible actions the state ombudsman committee may take, it is authorized to refer the complaint to the State Attorney for prosecution if there is reason to believe that a criminal act has been committed. Section 400.317(d), F.S.
Section 400.314, F.S., and s 400.307, F.S., both address the powers and duties of district ombudsman committees and, as they are related, should be considered together. Pursuant to s 400.307(2)(b), F.S., a district ombudsman committee is authorized `[t]o discover, investigate, and determine the existence of abuse and neglect . . .' in nursing home and long-term care facilities. No authority to enter upon such premises or to subpoena documents for purposes of investigation is extended to the committee by this subsection. Insofar as this section incorporates s 827.09, F.S., no additional authority is granted to subpoena documents or to make entries onto private premises without consent. Section 400.307(2)(c), F.S., which authorizes the district ombudsman committee to `elicit, receive, respond to, and resolve complaints . . .' made by or on behalf of patients or residents of these facilities, does not authorize the committee to enter upon the premises of a nursing home or long-term care facility or empower the committee to subpoena documents. Section 400.307(2)(f), F.S., provides that the committee may review the personal property and money accounts of Medicaid patients pursuant to an investigation to obtain information regarding a specific complaint. Again, neither subpoena power nor authority to enter upon the premises without the consent of the facility and patient or resident is extended to the committee by this section. Section 400.307(2)(e), F.S., states that the district ombudsman committee may `enter any nursing home or long-term care facility, with or without prior notice, pursuant to an investigation to obtain information regarding a specific complaint or problem.' The purported authority to enter, with or without prior notice, is circumscribed by the constitutional limitations discussed herein. This section does not authorize the district ombudsman committee to subpoena documents for purposes of investigation.
Section 400.314(1)(a-g), F.S., sets forth the substance of complaints for which investigation by a district ombudsman committee may be initiated. An investigation may only be undertaken based on the complaint of a resident or a resident's representative. Section 400.314(1), F.S. Pursuant to s 400.314(2), F.S., both state and district ombudsman committees are authorized, in an investigation, to `(a) [m]ake inquiries and obtain information as is necessary to carry out the purposes of this act,' `(b) [e]nter without notice to inspect the premises of a nursing home or long-term care facility for purposes of investigating a specific complaint . . .' and `(c) [h]old hearings.' As in s 400.307, F.S., no authority to subpoena documents is given to the committee by s 400.314, F.S. In addition, no authority to enter upon the premises of any nursing home or long-term care facility without the consent of the operator of the facility and/or the resident or patient when appropriate is extended to the district ombudsman committee by s 400.314(2)(a) or (c). Section 400.314(2)(b), F.S., purportedly authorizes such an entry but is qualified by and may not contravene constitutional protections regarding warrantless administrative searches.
Article I, Section 12, State Const., provides protection from unreasonable searches and seizures:
 The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.
This constitutional provision, coupled with federal constitutional protection, appears to protect confidential and privileged communications such as medical records, as well as the business records, books and papers of the facilities in question, including medical and other records of or pertaining to their patients or residents, from search by government entities. Administrative searches or inspections conducted outside the judicial process without consent, and without prior approval by a judge or magistrate (as evidenced by an administrative search warrant) are not reasonable, unless it can be shown that the administrative search or inspection falls within one of the well-delineated exceptions to this rule. See, e.g. See v. City of Seattle,387 U.S. 541 (1967); U.S. v. Sokolow, 450 F.2d 324 (5th Cir. 1971); Parsons v. State, 334 So.2d 308 (1 D.C.A. Fla., 1976), and Benton v. State, 329 So.2d 385 (1 D.C.A Fla., 1976). Cf. Michigan v. Tyler, 436 U.S. 499 (1978) and Colonnade Catering Corp. v. U.S.,397 U.S. 72 (1970).
The protection from unreasonable search and seizure of s 12, Art. I., State Const. and the Fourth Amendment to the U.S. Constitution has been extended to business premises as well as private residences. See, See v. Seattle, 387 U.S. 541 (1967), in which the U.S. Supreme Court held that warrantless administrative inspections of commercial structures as well as private residences are forbidden by the Fourth Amendment; and Jones v. City of Longwood, 404 So.2d 1083 (5 D.C.A. Fla., 1981), a wrongful death action in which the court stated that an ordinance requiring the building inspector and fire chief to periodically inspect all buildings and structures within the city was qualified by theFourth Amendment and could not authorize inspection of private property without a warrant.
Statutes, ordinances and rules purporting to authorize administrative searches of business premises without a warrant under regulatory statutes have been held violative of theFourth Amendment. See, Marshall v. Barlow's Inc., 436 U.S. 307 (1978), in which a section of the Occupational Safety and Health Act of 1970 was held to violate the Fourth Amendment insofar as it purported to authorize inspections without a warrant; Camara v. Municipal Court, 387 U.S. 523 (1967), holding that under theFourth Amendment the defendant had a constitutional right to insist that building inspectors (in this case inspectors from the Department of Public Health) obtain a search warrant prior to inspecting his residence for housing code violations and See v. Seattle,387 U.S. 541 (1967). In See v. Seattle, supra, in which a fire department inspector was refused entry to make a warrantless inspection of a locked commercial warehouse, the court discussed the privacy expectations of a business-person in commercial property:
 As we explained in Camara, a search of private houses is presumptively unreasonable if conducted without a warrant. The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant. 387 U.S. at 543.
The court concluded that administrative entry, without consent, upon portions of business premises which are not open to the public may only be compelled within the framework of a warrant procedure, Id. at 947, and held `that the basic component of a reasonable search under the Fourth Amendment — that it not be enforced without a suitable warrant procedure — is applicable . . . to business as well as to residential premises. . . .'397 U.S. at 948. In Marshall v. Barlow's Inc., supra, the court discussed the functions of a search warrant in a regulatory inspection:
 The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed. These are important functions for a warrant to perform, functions which underlie the Court's prior decisions that the Warrant Clause applies to inspections for compliance with regulatory statutes. 436 U.S. at 323-324.
Despite any authority which s 400.314, F.S., may give district ombudsman committees `to inspect,' a warrantless search or `inspection' for investigative purposes of private business premises to examine medical records or other private, confidential records of the facility or its patients or residents would be a violation of the Fourth Amendment to the U.S. Constitution and Article I, s 12, State Const.
Within Ch. 400, F.S., the rights of privacy and confidentiality are protected by s 400.022(1)(h), F.S., which states, in pertinent part, that a patient in a nursing home shall have the right `to have confidentiality in the treatment of personal and medical records . . . .' Cf. s 400.191(3), F.S., which provides that records, reports and documents which are made confidential by federal or state law or regulation may not be distributed or made available for purposes of compliance with that section by the department. See also s 394.459(9), F.S., which insures the confidentiality of clinical records for mental health patients and s 396.112, F.S., providing that treatment records of alcoholics and intoxicated persons shall remain confidential.
The confidentiality of the records, including medical records, maintained by a nursing home or long-term care facility and the constitutional guarantees of privacy and freedom from unwarranted search and seizure preclude a district ombudsman committee from inspecting these records without the consent of the operator of such a facility and, when appropriate, the patient or resident (or his representative) who has initiated a complaint pursuant to s 400.314, F.S., or an administrative search warrant.
QUESTION TWO
As noted in my response to Question One, neither the provisions of s 400.307, F.S., nor those of s 400.314, F.S., constitutionally authorize entry by a district ombudsman committee onto the premises of a nursing home or long-term care facility to inspect or search or investigate without the consent of the operator of the facility and/or the patient or resident when appropriate or an administrative search warrant. In the case of a specific complaint and when entry is consented to by the operator of the facility, it may be presumed that a patient or resident would consent to the inspection of his particular records. However, if consent is not forthcoming, an administrative search warrant is required.
Pursuant to s 400.307(2)(b), F.S., a district ombudsman committee is authorized `[t]o discover, investigate, and determine the existence of abuse and neglect . . .' in nursing home and long-term care facilities. The language of the statute gives the committee the authority to initiate investigations into occurrences of abuse and neglect. However, the statute does not confer the authority to subpoena documents for investigative purposes or empower the committee to make warrantless entries and inspections of the facility or of its residents or their accounts, property or records. Therefore the general investigative power contemplated by your question does not appear to be authorized by s 400.307(2)(b), F.S. Section 400.307(2)(e), F.S., is limited to investigations `regarding a specific complaint,' as is s 400.314(2)(b), F.S. See also s 400.307(2)(c), F.S., which provides that the committee shall `elicit, receive, respond to, and resolve complaints made by, or on behalf of, . . . residents;' s 400.307(2)(f), F.S., purporting to authorize the review of Medicaid patients' money and personal property accounts pursuant to an investigation to obtain information regarding a specific complaint. And see, s 400.314(1), F.S., which states that the district ombudsman committee `shall investigate any complaint of a resident . . . .' The investigation referred to in s 400.314(2) is that authorized and required by s 400.314(1), F.S. Section 400.314(2)(b) is restricted to `investigating a specific complaint.' Therefore, general investigations by the committee do not appear to be authorized by s 400.314, F.S., which gives the committee investigative powers when responding to a specific complaint by a resident or a resident's representative or by s 400.307(2)(b), F.S., authorizing the committee `to discover investigate, and determine the existence of abuse and neglect . . .' in nursing home or long-term care facilities but which does not extend subpoena powers or authority to make warrantless searches. Therefore, your second question must be answered in the negative and no response is required to Question Two (B).
To summarize, until judicially determined to the contrary, a district ombudsman committee has no authority or right under s 400.314, F.S., for investigative purposes to review and inspect the records of a nursing home or long-term care facility, including medical records or other private, confidential records, or such records of the residents or patients of such a facility without the consent of the operator of such facility and, when appropriate, the patient or resident (or his representative) or an administrative search warrant. In addition, it does not appear from the language of ss 400.307(2)(b) and (e) and 400.314(2)(a) and (b), F.S., that a district ombudsman committee possesses the authority to conduct general investigations which do not relate to a specific complaint.
Sincerely,
Jim Smith, Attorney General
Prepared by: Gerry Hammond, Assistant Attorney General